BENJAMIN DEFORD vs. THE STATE OF MARYLAND, use of JAMES KEYSER, and others, infants, by JAMES A. FOOS, their next friend, and of ELIZABETH C. FINK.

*Removal of Causes—Practice—Prochein Ami—When an Appeal will not lie—Infants may sue by Prochein Ami, though they have a Statutory Guardian—Respondeat Superior—Distinction between the Liability arising from the relation of Master and Servant, and that of Employer and a Contractor pursuing an independent employment—Liability incident to the creation of a Nuisance—Non joinder of Parties—Prayers.*

A jury having been sworn to try a cause in the Superior Court of Baltimore city, upon the discovery of some supposed favor or partiality in one of the panel, was withdrawn; a second jury was then empannelled and after trial was discharged, because they were unable to agree. At the second term succeeding, a suggestion was made by the plaintiff, that the cause be removed to some other Court; the suggestion was supported by the affidavit of the next friend of the infant *cestuis que use*, that a fair and impartial trial could not be had in the Superior Court, and that he had come to this belief since issue joined. HELD:

That upon this suggestion and affidavit, notwithstanding two juries had been sworn to try the cause and a term allowed to intervene, the cause was properly removed to the Circuit Court for Baltimore county.

The object of the removal of a cause being to secure a trial in a different tribunal, the application for it must be made before the trial commences in the Court where the cause is pending, and if not made until a jury has been empannelled and sworn, it will not be granted.

A jury will not be discharged on motion of counsel, because of the absence, by reason of sickness, of one of the jurors.

A cause in the Superior Court of Baltimore city, on suggestion that a fair and impartial trial could not be had, having been removed to the Circuit Court for Baltimore county, will not be remanded to the Superior Court upon the ground that the affidavit for removal was made by the next friend of the infant *cestuis que use*, suing in the name of the State.

Deford *vs.* The State,.use of Keyser, *et al.*

A *prochein ami* or next friend, though technically not a party to the cause, is a party within the meaning and contemplation of the Constitution and the Acts of Assembly, to regulate and give force to the constitutional provision, and is therefore capable of making the suggestion and affidavit for removal.

An appeal will not lie from the refusal of a Court to allow the pleadings in a cause to be amended.

Infants may sue by *prochein ami*, notwithstanding they have a guardian appointed by the Orphans' Court. In contemplation of law the *prochein ami* is admitted by the Court to prosecute for the infants, and a formal order of admission under the practice in this State is not necessary.

In a suit by and in the name of the State for the use of certain persons, the fact that one of the *cestuis que use* is of full age, does not dispense with the necessity of having a *prochein ami* to prosecute for the others who are infants.

The rule of "*respondeat superior,*" does not apply where the party employed to do the work, in the course of which the injury occurs, is a contractor pursuing an independent employment, and by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done. In such case the workmen employed by the contractor are his servants, and he is liable for any negligence or unskilfulness in the course of their employment, and not the party engaging the contractor to execute the work.

D being the owner of a lot in the city of Baltimore, situated on Lexington street, employed R to draw plans and superintend the erection of a building thereon; R drew a plan, being the ground plan and front elevation, to which D assented; he paid R a commission on the value of the building, R having no interest other than to have the work done well; D paid for the materials and the bills for all the workmen upon orders from R. R employed T, a master bricklayer, and two carpenters; T employed the journeymen bricklayers and hod carriers. While the building was in course of erection, the cornice and a portion of the front wall fell upon K, who was passing, and injured her so severely, that shortly thereafter she died. When the wall fell, neither D, R or T were present, but one of the bricklayers and a hod carrier, both employed by T, were on the building at work. HELD:

1st. That R and T occupied the position of independent contractors, as contradistinguished from servants; and that the journeymen bricklayers and hod carriers having been employed by T, and at work under his control, were his servants and not those of D.

Deford *vs.* The State, use of Keyser, *et al.*

2d. That while D was not liable for the acts of these parties, from the relation of master and servant, yet if it could be shown that the wall which was in course of erection on his premises, by his sanction, under his contract and for his use and benefit was constructed in so defective and dangerous a manner as to constitute a nuisance, he would be responsible for the consequences resulting from the defective work allowed to be done by them.

3d. But if the wall were erected in an ordinarily substantial and secure manner, and was overthrown by the operation of extraordinary causes, against which ordinary skill, care and foresight could not provide, D would not be liable.

In an action for damages brought in the name of the State for the use of certain children of a person, alleged to have been killed by " wrongful act, neglect or default," it is not necessary to the maintenance of the action, that *all* the children of the deceased should be joined therein.

Prayers may properly be rejected when they embrace propositions of law contained in other prayers which have been granted.

APPEAL from the Circuit Court for Baltimore County.

This was an action under Art. 65, entitled " Negligence," of the Code of Public General Laws, brought in the Superior Court of Baltimore City against the appellant and Edwin Robinson, by and in the name of the State, for the use of James, Charles M., Edward C., Richard F. and Martin L. Keyser, infant children of Mrs. Ellen Keyser, deceased, who sued by their next friend, and also for the use of her daughter Elizabeth C. Fink, an adult. The declaration alleged that Mrs. Keyser was killed by the wrongful act, neglect and default of the defendants. The case was removed from the Superior Court to the Circuit Court for Baltimore county where it was tried. At the trial, it was admitted that the appellant was the owner of a lot in the city of Baltimore, situated on Lexington street near Paca, and that Robinson planned and built a brick house for him on said lot, and that sometime in July, 1864, the cornice which was also of brick, and a portion of the front wall of said house which was being erected, fell on Mrs. Ellen Keyser as she was passing along Lexington street in front of the house, and she was so griev-

ously injured that she died two days after the accident. Several witnesses testified that the cornice was too heavy for the wall, and its great weight caused it to fall. Witnesses also testified that the wall was a nine inch wall, but they varied in their estimates of the extent of the projection, some fixing it at twelve inches, and some at sixteen inches from the face of the wall; that the usual projection for a cornice for such a wall was from four-and-a-half to seven inches, and that more than seven inches was dangerous, and that hundreds of people in passing by the house left the pavement in front of the house and passed by on the other side as a measure of safety, to avoid the danger which they feared from the building.

It was shewn that Mrs. Fink, one of the equitable plaintiffs, lived with her mother, Mrs. Keyser, who gave her and her minor child board and lodging; that Mrs. Fink assisted her mother about the house; that Mrs. Keyser left other children, who, at her death, were over twenty-one years of age, and that Mrs. Keyser was a widow at the time of her death.

The defendants offered evidence tending to prove that the projection of the cornice was eight inches and a quarter; that the plan and mode of construction of the wall and cornice were safe and proper; that there was a severe storm of wind and rain two days before, and the day before the wall fell; that some cavalry, at the time of the accident, were passing down a cross street, from sixty to a hundred feet distant, and that there was a great rush of people from the market to see the cavalry. The defendants also proved that the appellant employed Robinson to draw plans and superintend the construction of the building; that Robinson drew a plan (being the ground plan and front elevation) which the appellant assented to; that he paid Robinson a commission of five per cent. on the value of the buildings, and that Robinson had no other interest in the matter except to make good work for the appellant, who paid for all the materials and also all the bills for all the workmen, upon the orders of Robinson; that

Deford *vs.* The State, use of Keyser, *et al.*

Robinson employed one Thomas, as master bricklayer, and also two carpenters; that Thomas employed the journeymen bricklayers and hod carriers. The defendants offered evidence to prove that Robinson and Thomas were skilful men, and that the cornice was constructed in such a manner that it would not have fallen from ordinary causes, but from extraordinary causes only. The plaintiff offered evidence rebutting the defendants' testimony and tending to prove that the cornice was not constructed on the plan testified to by Robinson, and also that the plan was a very unsafe and improper one.

Seven exceptions were taken by the defendants below, which, the seventh excepted, will be found set forth with sufficient fulness in the opinion of the Court.

*Seventh Exception:* Upon all the evidence in the cause the plaintiff offered the following prayers:

1st. If the jury shall find from the evidence that the defendant, Deford, was the owner of the lot of ground in the city of Baltimore, on Lexington street, near Paca, mentioned in the evidence, and that his agents were constructing thereon for his benefit, the building mentioned in the evidence, and that the cornice of said building fell and caused the death of Mrs. Ellen Keyser, and that said agents of Deford did not use ordinary care, skill and prudence in constructing said building, and in guarding against accidents, while the same was in course of construction, and that the death of Mrs. Keyser was the result of such want of ordinary care, skill and prudence on the part of said agents, and was a natural result thereof; and further, that Mrs. Keyser could not have avoided the casualty which caused her death by the exercise of ordinary care and caution, and that she did on that occasion use such care and caution; their verdict must be for the plaintiff against the defendant, Deford.

2d. If the jury shall find from the evidence, the want of ordinary care, skill and prudence on the part of the agents of Deford, as mentioned in the plaintiff's first prayer, and that the death of Mrs. Keyser took place under the circumstances

mentioned in said prayer, and that such want of ordinary care, skill and prudence, directly tended to produce said death, and was adequate to produce such result, and that the effects of such want of ordinary care, skill and prudence, were in operation at the time of the accident, which resulted in her death, and that her death would not have occurred if the agents of Deford had used the ordinary care, skill and prudence, mentioned in the first prayer; then the jury are to consider that Mrs. Keyser's death was caused by the want of ordinary care, prudence and skill on the part of the agents of Deford; even although they may also believe that some other cause contributed to bring about said death.

The defendants then offered prayers, substantially as follows:

1st. If the jury find from the evidence that Ellen Keyser died without a husband or parent surviving her, but left four other children than those named in the declaration and bill of particulars, all of whom were alive at the institution of this suit, and three of whom still survive; and if they further find that Elizabeth C. Fink, one of the *cestuis que use* named in the pleadings, was, at the death of said Ellen Keyser, over the age of twenty-one years, then the plaintiff cannot recover in this case, because a bill of particulars of the names of all said children of Ellen Keyser, was not furnished to the defendants or their attorney, together with the declaration.

2d. If the jury find that Ellen Keyser left other children surviving at her death, and surviving also at the date of the suit brought, and still surviving, who are not joined or named, either in the declaration or bill of particulars, then the plaintiff cannot recover under said pleadings in this case, because of such non-joinder.

3d. That the plaintiff cannot recover unless it be shown affirmatively by proof, that the death of Mrs. Keyser resulted *wholly* from the wrongful act of the defendants, or one of them, or his or their servants or agents; and also how the accident occurred.

4th. That the plaintiff is not entitled to recover unless it can be shown by whose fault or neglect the fall of the wall was occasioned.

5th. If reasonable care were taken by the defendants to guard against accidents arising from ordinary causes, in the course of the construction of the wall, the plaintiff is not entitled to recover, if the falling of the wall be attributable to extraordinary causes.

6th. That in the plan and construction of the front wall and cornice, the defendants were only required to exercise reasonable skill and care; and the burden of proof was on the plaintiff to show affirmatively, to entitle him to recover, that the falling of the wall and cornice, and the death of Mrs. Keyser, were occasioned by the want of such reasonable skill and care on the part of the defendants or their servants.

7th. If the defendants and their servants, in and about the plan and construction of the wall and cornice, used ordinary and reasonable skill and prudence; and the said wall and cornice fell from some cause unknown to the jury, and is not to be attributed to the want of skill and care of the defendants, then the plaintiff is not entitled to recover.

8th. If there were no neglect or default in Robinson, he is not responsible for the neglect or default of any one else.

9th. The hypothesis of this prayer is presented with more clearness and fulness in the twelfth.

10th. That the defendants are not, nor is either of them responsible for any negligence of their bricklayer, carpenter or other workman, if such person or persons so employed, were competent, skilful and careful men in their business; and the plaintiff is not entitled to recover, if the falling of the wall were not caused by any act, neglect or default of the defendants, or either of them, but of some other such person as above named, even, although such other person were acting as agent for, or employed by the defendants, or either of them, if such person were a competent, skilful and careful man in his business, unless the negligence of such agent or

employee, were in pursuance of some directions given him by the defendants, or one of them, or resulted from the defendants, or one of them, not having given some directions, which said defendant or defendants ought to have given.

11th. Withdrawn.

12th. That if the jury find from the evidence, that the defendant, Deford, was the owner of the land on which were erected the houses mentioned in the evidence, and that he employed the defendant, Robinson, as an architect, to draw plans and superintend the construction of the said houses; and that said Robinson did accordingly draw such plans and superintend said construction, and that for said services he was paid by said Deford a commission of five per cent. on the cost of said houses; and that said Robinson selected Joseph B. Thomas as master bricklayer, to do the work of bricklaying on said houses, and he accordingly did it, and was paid by said Deford upon orders from said Robinson, and that both Robinson and Thomas, were competent and skilful workmen; and that the plans of Robinson were proper and such as a prudent architect might safely propose to have built; and that the construction of said houses was superintended with the usual and ordinary care of an architect; and that while said houses were in course of construction, a heavy northeasterly storm, beating upon the face of the front wall of said houses, had saturated the bricks with moisture and made them heavier, and weakened the cohesive power of the mortar, and thus rendered the said wall more liable to fall, but not so, however, that it would have fallen without some additional cause; and that said Thomas selected and employed a journeyman bricklayer, who was under his exclusive control, who went to work on said buildings on the morning on which a portion of the said houses fell; and that a hod carrier, selected and employed also by Thomas, and under his exclusive control, was carrying up bricks for said journeyman, and that while so engaged a large quantity of bricks and mortar fell from the part of the houses on or

about which said journeyman and said hod carrier were, at the time, engaged in working; and that said fall was occasioned by the negligence of said journeyman or said hod carrier, or both, or was the result of some unavoidable accident; and that the fall of the front wall, by which Mrs. Keyser was injured, resulted from the fall of said bricks and mortar first mentioned, and while neither said Deford, Robinson or Thomas were at or near the said houses; and that neither said Deford nor Robinson could by any ordinary prudence or care have foreseen or prevented said accident, then neither of the defendants is liable in this action.

13th. That vindictive or punitive damages must not be awarded, but only the pecuniary value of the services of the mother of the *cestuis que use* as nearly as it can be estimated.

14th. That in estimating such value, the age of the mother, and the probable duration of her life, or of her services, and the situation, age and pecuniary circumstances of the *cestuis que use* must be taken into consideration.

15th. That the plaintiff is only entitled to nominal damages.

16th. That the jury, in their estimate of the value of the services of Mrs. Keyser, are confined in assessing damages to the minor children, who were such at the time of her death, and during their minority.

17th. The plaintiff is not entitled to recover, under the pleadings, if Mrs. Elizabeth C. Fink was of the age of twenty-one years at the time of the death of Mrs. Ellen Keyser, and was not supported by Mrs. Keyser, prior to her death, but rendered services to said Mrs. Keyser and her infant children equivalent to the board of the said Mrs. Fink.

18th. If the jury find from the evidence, that Robinson was an architect and builder, engaged in the business of planning and building houses, and a man of competent skill in his business; and that Deford contracted verbally with Robinson

to plan and build for him, on a lot of which Deford was the owner, three two-story houses; and that, by the terms of their agreement, Robinson was to plan and build said houses and to buy the materials and employ the workmen for their construction, and Deford was to pay for said work or materials, either on Robinson's order to the parties furnishing them, or to Robinson himself when he had paid for them, and was also to pay Robinson five per cent. on the cost of said work and materials; and shall further find that Robinson proceeded to plan and build said houses under said verbal agreement; and that Deford did not interfere in the planning or construction thereof; and that the drawing of the front elevation and ground plan of said houses, offered in evidence, was shewn to Deford and assented to by him, and was the only drawing in reference to said houses which was exhibited to Deford; and that said drawing was not intended to shew, and did not shew the size, material or mode of construction of the cornice, which was afterwards built on the first wall of said houses; and that said Deford did not, before said cornice was built, know what was to be its size, material or mode of construction, and did not see it while it was being constructed, and did not direct, interfere with, or control the plan or construction of said cornice, then the said Robinson was not the servant of Deford in the premises, and the plaintiff is not entitled to recover against Deford, even if the jury shall find that the falling of said cornice and the death of Mrs. Keyser, the mother of the *cestuis que use*, were wholly caused by a defect in the plan of said cornice, (or in the mode of its construction,) which might have been prevented by the exercise of such skill and care by Robinson, as an architect and builder of ordinary and reasonable skill and prudence would have exercised under similar circumstances; unless the jury shall find that Robinson was employed by Deford as his agent to plan and construct the houses in question, and thereby leaving with Deford the right to control Robinson in the plan and construction of the said building.

The Court granted the plaintiff's prayers, as also the sixth, seventh, thirteenth and fourteenth prayers of the defendants, the law of the defendants' prayers being conceded by the plaintiff's counsel; it also granted the eighth and sixteenth prayers of the defendants as modified, the law of the latter being conceded by the counsel of the plaintiff; the eleventh prayer of the defendants was withdrawn and the others were rejected.

To the granting of the plaintiff's prayers, and the rejection of the prayers of the defendants, they excepted. The verdict and judgment were against Deford and in favor of Robinson. Deford moved for a new trial and in arrest of judgment; and these motions being overruled, he appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*Edward Otis Hinkley* and *Robert J. Brent*, for the appellant:

The *narr.* and bill of particulars disclose but six *cestuis que use* or children of the deceased, Ellen Keyser. There were four other children not joined or named, and Elizabeth Fink was an adult at the bringing of this suit. The fourth exception shows that the defendants were denied the right of pleading in bar the fact that the infant *cestuis que use* did not sue by their statutory guardian. This was error. Suits in the name of the State for *the use* of the children, &c., under Art. 65, of Code of Public General Laws, are like suits on public bonds, and the *cestuis que use* are the real plaintiffs. *Code of Pub. Gen'l Laws, Art.* 27, *sec.* 8; *Ing & Mills vs. The State, &c.,* 8 *Md.,* 294.

Courts of Law protect the rights of a *cestui que trust* on motion in a summary way. *Evans' Practice,* 311; *Owings & Piet vs. Low,* 5 *G. & J.,* 134 *and* 145.

Conceding that, by the Statute of Westminster, infants may sue in a case like this by next friend, yet it is error if the *narr.* does not state him to be admitted by leave of Court.

2 *Saund. Rep.*, 117 *h. note* 1. And so are all the precedents. 2 *Chit. Plead.*, 32, 33. We can pray the Court to instruct that the *narr.* is insufficient. *Evans' Practice*, 389, 392. In joint suits, if one of the plaintiffs be of full age, they are but one person and may sue by attorney. 2 *Sellon's Practice*, 65; 2 *Strange*, 783.

Elizabeth C. Fink, one of the *cestuis que use* is of full age, and therefore the *prochein ami* is discharged, and the adult may, on motion, strike out her own name. *Acres vs. Little*, 7 *Simons*, 138.

The *onus* is on the plaintiff to prove the infancy of the *cestuis que use. Boyd vs. Boyd*, 6 *G. & J.*, 25.

The *prochein ami* is but security for costs, and no party — he may be changed, or the infant may sue without him. 2 *Sellon's Practice*, 67 ; *James vs. Boyd*, 1 *H. & G.*, 1.

If he does another will be appointed. *Richardson vs. Swann*, 7 *Gill*, 366, 376. But the Code clearly contemplates that all suits for infants should be by a statutory guardian, when one exists, as in this case. *Code of Public General Laws, Art.* 93, secs. 193, 203 ; *Kraft vs. Wickey*, 4 *G. & J.*, 332.

The defendants' first prayer should have been granted, because by the Code there can be but one suit, and the bill of particulars and *narr.* must name all of the *cestuis que use*, that the jury may apportion the damages among all the children. It makes no difference, as a question of pleading, that some are minors and some are adults, especially as one adult is here. In our case the precise point of non-joinder of a portion of the children is made, and no case presented this point. Besides, if the infants alone can sue, then there was a misjoinder, as Elizabeth Fink was an adult, as claimed in defendants' seventeenth prayer. The burden of proof is on the plaintiff. *McCully vs. Clark & Thaw*, 40 *Penn.*, 399 ; *Lehman vs. City of Brooklyn*, 29 *Barbour*, 238.

The employment of a competent workman relieved the defendant from responsibility for that workman's subordinates. *Hunt vs. Pa. R. R.*, 51 *Pa.*, 481, *and cases cited on*

*p.* 481; *City of Buffalo vs. Holloway,* 3 *Selden,* 493; *Quarman vs. Burnett,* 6 *Meeson & Welsby,* 499; *Rapson vs. Curlett,* 9 *Meeson & Welsby,* 711; *Milligan vs. Wedge,* 12 *Adol. & Ellis,* 737; *Blake vs. Ferris,* 1 *Selden, N. Y.,* 49; *Reedie vs. London, &c., Railroad,* 4 *Exch.,* 244; *Gilbert vs. Beach,* 5 *Bosworth,* 449, 457; *Painter vs. The Mayor, &c., of Pittsburgh,* 46 *Pa.,* 220; *Hilliard vs. Richardson,* 3 *Gray,* 350; *Barry vs. The City of Saint Louis,* 17 *Miss.,* 127; *Forsyth vs. Hooper, and others,* 11 *Allen,* 419; *Wood vs. Cobb,* 13, *Allen,* 59; *Readle vs. The London and North Eastern Railway Co.,* 4 *Exchq.,* 255; *Peachey vs. Rowland,* 16 *Eng. L. & Eq.,* 444; *Overton vs. Freeman,* 8 *Eng. Law and Eq.,* 479; *Knight vs. Fox,* 5 *Exchq.,* 925; *Gayford vs. Nicholls,* 707; *Quin vs. Moore,* 15 *New York,* 433; *Keller vs. N. Y. Central R. R.,* 17 *Howard's Practice Reports,* 102.

As to the measure of damages, the following authorities were referred to: *Green vs. Hudson River R. R. Co.,* 32 *Barbour,* 25; *Blake vs. Midland R. R.,* 18 *Adol. & Ellis,* (*N. S.,*) 93; *Oldfield vs. New York and Harlem R. R. Co.,* 14 *N. Y.,* 310; *McIntyre vs. New York Central R. R. Co.,* 47 *Barbour,* 519; *Calkins vs. Barger,* 44 *Barbour,* 424; *Caldwell vs. Brown,* 53 *Penn.,* 454; *The Pennsylvania R. R. Co. vs. Zebe, et ux.,* 33 *Penn.,* 329.

*Arthur W. Machen* and *Wm. Shepard Bryan,* for the appellee:

After sundry proceedings the defendants denied the jurisdiction of the Circuit Court for Baltimore County, and moved to remand the case to the Superior Court, upon the ground that the affidavit for removal from that Court was made by the next friend of the infant equitable plaintiffs. The next friend is the proper representative of the infants, and conducts the suit in their place. He is responsible for costs, and is in the place of a party in every thing, except that he can derive no advantage from the suit. They have not, in contemplation of law, capacity to take any step in the cause;

and some one must act in their stead, and do for them what they might do for themselves if they had legal capacity.

A guardian *ad litem* is bound to make the best defence for an infant defendant; he swears to the infant's answer. He is the person on whom a subpœna to hear judgment must be served. *Snowden vs. Snowden,* 1 *Bland,* 552; *Taylor vs. Atwood,* 2 *P. Williams,* 643.

A next friend, by the Statute of Westminister 2d, occupies precisely the position of a guardian for the purposes of the suit. *Coke upon Littleton,* 135 *b, note* 1; 1 *Thomas' Coke,* 171. Rules made in the progress of the cause are to be served on the parties. On whom should they be served when an infant is a party, except the guardian or next friend, or his authorized attorney?

The Constitution of 1864, (Art. 4, sec. 9,) which was in force when the removal was ordered, gives a party an absolute right of removal at any time, provided he shows to the Court, by satisfactory evidence, that he cannot have a fair and impartial trial. This right the Legislature could not abridge. *Wright vs. Hamner,* 5 *Md.,* 370. Evidence was produced, and on consideration of it, the Court adjudged the removal. The Court's decision on the evidence was final.

It was not necessary that the declaration should state that the next friend was admitted by the Court. The form given by the Code was pursued in this case. In the old common law form the admission by the Court was stated in the declaration, but no proof of the admission was required; and if it was not stated, no advantage could be taken of the omission after the defendant had pleaded. 2 *Williams' Saunders,* 117 *f, note* 1. It is not now necessary to apply to the Court for permission to sue as next friend, and it is very rarely done. *Guild vs. Cranston,* 8 *Cushing,* 507–8–9; 3 *Robinson's Practice,* 230; *Clarke vs. Gilmanton,* 12 *New Hamp.,* 518; *Judson vs. Blanchard,* 3 *Conn.,* 579.

The fact that one of the equitable plaintiffs was an adult, did not authorize the infants to sue by attorney. 1 *Tidds.' Practice,* 99, *note; Randalls vs. Wilson,* 24 *Missouri,* 76.

The only exception is in the case of executors, and this is said to be by reason of their representative character.

The first prayer of the plaintiffs asserts that Deford was responsible for the want of ordinary care, skill, and prudence on the part of his agents in constructing his building, and in guarding against accidents while it was in course of construction.

The second informs the jury under what circumstances they should consider the want of care, skill and prudence, as the cause of Mrs. Keyser's death. *Davis vs. Garrett,* 19 *E. C. L. R.,* 214; *Powell vs. Salisbury,* 2 *Younge & Jervis,* 391; *Vandenburgh vs. Truax,* 4 *Denio.,* 464; *Guille vs. Swan,* 19 *Johnson,* 381.

The ninth section of Ordinance, No. 35, requires buildings to be erected with side walls; the evidence shows that this was not done in this case. There was also evidence to show that both wall and cornice were constructed according to an unsafe and injudicious plan, and that Deford distinctly assented to the ground plan and front elevation of the building. If these facts were found by the jury, the building was a nuisance, and the owner would be responsible to the party injured. And this responsibility would not depend on the question whether the persons who built it were the agents or servants of the owner. *Gardner vs. Heartt,* 2 *Barbour,* 165; *Pickard vs. Smith,* 100 *E. C. L. R.,* 468; *Blake vs. Thurst,* 2 *Hurlston & Coltman,* 20; *Laugher vs. Pointer,* 12 *Eng. Com. Law,* 313; *Hole vs. S. & S. Railway,* 6 *Hurl & Norm,* 488; *Chicago vs. Robins,* 2 *Black's S. C. Reps.,* 418; *Storrs vs. The City of Utica,* 17 *New York,* 104; *City of Buffalo vs. Holloway,* 3 *Selden,* 493.

Most of the rejected prayers, (the eighteenth especially,) ignore this responsibility.

The third, fourth, and fifth prayers of the defendants were well calculated to confuse and mislead the jury, and were therefore properly rejected. *Gault vs. Humes,* 20 *Md.,* 297.

The ninth, twelfth and eighteenth prayers were framed on the supposition that Robinson and Thomas, on the facts stated in them, were not the servants of Deford, but were independent contractors. The doctrine on the subject is fully considered on a review of the authorities in *Hilliard vs. Richardson*, 3 *Gray*, 349. The facts stated in the eighteenth prayer would show that Robinson was the servant of Deford. The very point is decided in *Stone vs. Codman*, 15 *Pick.*, 297. See also *Story on Agency*, sec. 454; *Samyn vs. McClosky*, 22 *Ohio*, 536; *Morgan vs. Bowman*, 22 *Missouri*, 538. Robinson could not be considered as an independent contractor, unless by the terms of the agreement between him and Deford, the latter had divested himself of all control over him in the prosecution of the work. All the cases recognize this principle. *McCamus vs. The Citizens' Gas Light Company*, 40 *Barbour*, 381. As to the test of the relation of master and servant, and the difference between this relation and that of contractors, see *Martin vs. Temperly*, 45 *E. C. L. R.*, 311, (opinion of COLERIDGE.) *Sadler vs. Henlock*, 30 *E. L. & E. R.*, 170; *Wiswald vs. Brinson*, 10 *Iredell*, 569, 573 and 578, (dissenting opinion of RUFFIN.)

The defendants' fifteenth prayer asserting that the damages could not be more than nominal, is inconsistent with their fourteenth prayer. The question is settled in the case of the *Baltimore and Ohio Rail Road vs. State, use of Kelly*, 24 *Md.*, 271.

The first and second prayers of the defendants involve the construction of Art. 65, sec. 2, of the Code of Public General Laws.

The State is the legal plaintiff, and not the persons for whose use the suit is brought. They are the equitable plaintiffs. Their rights are protected by the Court, but they do not affect the form of the pleadings. *State vs. Dorsey*, 3 *G. & J.*, 75; *Wallis vs. Dilley*, 7 *Md.*, 250. The object of requiring the suit to be brought in the name of the State, was to avoid all questions as to parties; otherwise, it would have been

provided that the suit should have been brought directly in the name of the relations.

The damages are to be apportioned among them by the jury; to each one his separate share. Each one can release his share without reference to any other, for the plain reason that there is no community of interest in the several shares.

When the Statute says the action is to be brought for the use of the person entitled to damages, it is directory, not mandatory. *Murphy vs. Logan*, 10 *Irish Com. Law Rep.*, 87. It never could have intended that a *cestui que use* should be joined against his will; nor that if one should release his claim for damages, or should refuse to join with the others, that they should thereby lose their right. Nor could it have meant that persons should necessarily be joined who had sustained no damages; who had received no injury by the death. Moreover, even if the equitable plaintiffs could be affected by the technical rules of pleading applicable to legal plaintiffs, it is clear that in an action of tort, the non-joinder of plaintiffs must be pleaded in abatement. *Chitty's Pleading*, 76, 93 *and* 98.

The first and second prayers were properly rejected.

The seventeenth prayer was properly rejected. It supposed that if Mrs. Fink were not entitled to damages, there should be a verdict for the defendants. In *Pym vs. Great Northern Railway Company*, 116 *E. C. L. R.*, 396, damages were assessed for eight of the nine children of the deceased, and none for the elder son.

ALVEY, J., delivered the opinion of the Court.

This was an action under Article 65 of the Code of Public General Laws, instituted in the Superior Court of Baltimore city, by the State, for the use of certain of the children of Mrs. Ellen Keyser, against Benjamin Deford and Edward Robinson, for the alleged wrongful act, neglect and default of the defendants, whereby the death of Mrs. Keyser was produced.

Deford *vs.* The State, use of Keyser, *et al.*

The case was removed from the Superior Court to the Circuit Court for Baltimore county, where it was tried; and the first question that occurs is as to the regularity of the removal.

It appears that there had been two juries sworn to try the cause in the Superior Court; the first of which were withdrawn, because of the discovery of some supposed favor or partiality, in one of the panel; and the second of which were discharged because they were unable to agree upon a verdict, after trial. Several terms had elapsed, after issue joined, before motion was made for the removal. The suggestion was made by the plaintiff, supported by the affidavit of James A. Foos, the next friend of the infant *cestuis que use;* and in such affidavit it is stated that the deponent had come to the belief that a fair and impartial trial could not be had in that Court, since the issue joined. The Court, upon this suggestion and affidavit, ordered the removal of the cause to the Circuit Court for Baltimore county, to which the defendants excepted.

The ground of this exception appears to be, that because juries had been sworn to try the cause, and several terms of the Court had been allowed to pass, the right and power of removal did not then exist.

But in this position of the defendants we do not concur. There had been no effectual trial of the cause; and after the discharge of the last jury, because of their inability to agree, the cause was still pending for trial, as much so, and to all intents and purposes, as if a jury had never been sworn. The object of removal is to obtain a fair and impartial trial, and there is no reason why the right should be lost because a jury had been sworn that could not agree. It indeed may often happen, that by means of the abortive trial, parties are enabled to discover, for the first time, just grounds to apprehend that fairness and impartiality will not be obtained in the second trial. And if the miscarriage of the first trial, for any cause, were to be allowed to operate a preclusion of the right of

removal in reference to a second, the great object of this constitutional power would, in fact, be defeated. The right of removal is given, (*Const.* 1864, *Art.* 4, *sec.* 9; *Const.* 1867, *Art.* 4, *sec.* 8,) *whenever* any party to a cause, or his counsel, can make it appear that a fair and impartial trial cannot be had; and to limit this right, in the manner contended for by the defendants, it could only be done by a manifest disregard of the plain terms of the Constitution. We think, therefore, the defendants' first exception was not well taken.

The cause having been removed, and placed on the docket of the Circuit Court for Baltimore county, when it was regularly called for trial, neither the defendants nor their counsel, it appears, were present. The Court, however, proceeded to empannel and swear a jury, in the absence of the defendants and their counsel. On the succeeding day, after the jury had been fully sworn, the counsel of the defendants appeared in Court; and the defendants then suggested that they could not have a fair and impartial trial in that Court, and that the cause be removed to some Court of a different circuit. The Court overruled this application, and this ruling forms the subject of the second exception.

That the Court was right in refusing to order the removal in the then condition of the cause, we think is clear. The object of removal being to secure a trial in a different tribunal, the application for it must be made before the trial commences in the Court where the cause is pending. Here the trial had commenced, the jury having been actually sworn; and that the right of removal did not then exist, has been expressly decided in the case of *Price vs. The State*, 8 *Gill*, 295.

Nor can we say that the Court below erred in refusing to discharge the jury, upon the motion of the defendants, because of the absence, by reason of sickness, of one of the jurors; notwithstanding the offer of readiness by defendants' counsel to proceed with the trial, and their remonstrance against the delay. The whole matter was within the discretion of the

Court, and its action upon the subject cannot be reviewed on appeal.

The next exception was taken to the refusal of the Court to remand the case back to the Superior Court of Baltimore city. The motion to remand was based upon what was supposed to be apparent errors, showing a want of jurisdiction in the Court to entertain the cause. And the supposed errors of the Superior Court, by which the jurisdiction of the Circuit Court for Baltimore county failed to attach, were, that the affidavit for removal had not been made, as the law required, by a party to the cause; and that the suggestion for removal had been made too late.

This last ground assigned, to sustain the motion, has already been disposed of, in considering the first exception. And the first mentioned ground, that the person making the affidavit was not a party, but the next friend only of the *cestuis que use,* is not more tenable than the last. The *prochein ami* or next friend, it is true, is not a technical party to the cause; but he is a party within the meaning and contemplation of the Constitution and the Acts of Assembly to regulate and give force to the constitutional provision; and is therefore capable of making the suggestion and affidavit for removal. The Court could not have done otherwise than refuse the motion.

In the next exception we have the defendants' motion for leave to amend their pleadings, for the purpose of pleading in bar of the further maintenance of the action by the next friend, the fact that at the institution of the suit, Edwin Walker was, and at the trial still remained, the guardian of the infant *cestuis que use,* and as such, was alone entitled to institute the action in behalf of his wards. This motion the Court overruled, and we think, very rightly.

In the first place, this being a motion for leave to amend pleadings, and therefore within the sound discretion of the Court, the judgment thereon is not the subject of review on appeal. *Ellicott vs. Eustace,* 6 *Md.,* 506. But, apart from

this, the matter proposed to be pleaded by way of amendment, was insufficient, and therefore immaterial, as a defence to the further prosecution of the action. The infant *cestuis que use* were properly represented by next friend, notwithstanding they had a guardian appointed by the Orphans' Court.

By the common law infants could sue or defend only by guardian. It was by the Statute of Westminster, 1, c. 48, that they were authorized to sue by *prochein ami* in an assize; and by the Statute of Westminster, 2, c. 15, that they were authorized so to sue in all other actions. And, according to LORD COKE, since these statutes an infant shall sue by *prochein ami,* and defend by guardian. 2 *Inst.,* 261, 390; *Co. Litt.,* 135 *b.* And FITZHERBERT, in the N. B., (27,) H., lays it down, that "An infant shall sue by *prochein ami; but* if the infant be defendant in any action, he shall make his defence by guardian and not by *prochein ami.*" Mr. HARGRAVE thinks it probable, however, that neither FITZHERBERT nor LORD COKE designed to be understood as excluding the election to sue either by *prochein ami* or by guardian; and in accordance with this suggestion have been the decisions, and the established practice. 2 *Wms. Saund.,* 5th *Ed.,* 117, *f.* (1;) 1 *Tidd's Prac.,* 99. The *prochein ami* is, in contemplation of law, admitted by the Court to prosecute for the infant; though, according to the practice of our Courts, never by any actual order passed for that purpose. He becomes an officer of the Court, and subject to its orders and direction; and whether there be a guardian or not, appointed by a different authority, makes no difference, and does not affect the authority of the *prochein ami* to prosecute for the infant. He stands very much in the relation of an attorney to the case, and as it is supposed that he is appointed by the Court, it is competent at any time for the Court to revoke his authority and remove him, and if it be necessary, to appoint another in his place. *Com. Dig. Pleader,* 2, *c.* 1.

The defendants' sixth exception was taken to the Court's refusal to strike out the name of the next friend, because it

did not appear on the record that he had been admitted to prosecute for the infants, and because it appeared that one of the *cestuis que use* was of full age, at the time of bringing the suit. In our opinion, there was no ground for exception to this ruling of the Court. As we have said, it was not necessary, under our practice, that there should have been a formal order of admission of the *prochein ami;* his admission being implied until expressly disallowed. And as the infants were not capable of appointing an attorney, they could only sue either by *prochein ami* or guardian; and the fact that one of the *cestuis que use* was of full age, did not dispense with the necessity of having such officer to prosecute for those who were minors. In the case of a suit by two executors, one of whom is an infant, there the executor of full age may appoint an attorney for himself and the infant co-executor, because they both together make but one representative. 1 *Tidd's Practice*, 99. But in this case, the parties suing are not suing in a representative character, but for the recovery of damages which they claim severally in their own right.

Having thus disposed of the several preliminary questions we come now to the main propositions of the case, which we shall state and determine in as brief a manner as possible.

While it is admitted that Mrs. Keyser, the mother of the *cestuis que use,* came to her death by the fall of defendant Deford's wall, the leading question in the case is, upon whom, of all the parties connected with the erection of the building, does the legal responsibility rest? For the plaintiff, it is contended, that Deford is liable on two grounds: First, that the parties, whose negligent and wrongful acts produced the injury, were engaged or employed by him, or by others for him, and were, for the particular work, his servants; and, secondly, that he did not take due care to prevent the creation or erection of a nuisance on his ground, which it was his duty to have prevented, whether the erection was by his servants or others.

On the part of Deford, against whom alone the judgment below was obtained, it is contended, that he is not legally responsible for the accident that occurred, because, first, he did not bear the relation of master or principal to the parties, or any of them, whose acts and neglect are supposed to have produced the injury; and, secondly, that the accident was produced by extraordinary causes, which, by the exercise of ordinary care and skill, could not be avoided.

The principles here involved, have been, upon various occasions, most elaborately discussed in the Courts of England, and it has only been within a few years past, and since the case of *Laugher vs. Pointer,* 5 B. & Cr., 547, in which the Judges divided in opinion, that the Courts of Westminster Hall have been able to arrive at a definite conclusion as to the true distinctions applicable to cases of the class to which this belongs. And, without referring to all the cases upon the subject, we may refer to the case of *Quarman vs. Burnett,* 6 M. & Wels., 499, which is regarded as a leading case, and the one in which the present approved doctrine was first definitely established.

In that case, the owners of a carriage were in the habit of hiring horses from the same person, to draw it for a day or drive, and the owner of the horses provided a driver, through whose negligence an injury was done to a third party; and it was held, that the owners of the carriage were not liable to be sued for such injury, upon the distinction taken between the liability resulting from the relation of master and servant, and that of employer and a contractor pursuing an independent employment. And, in the course of the able judgment that was delivered by PARKE, B., he said: " Upon the principle, that, *qui facit per alium, facit per se,* the master is responsible for the acts of his servant; and that person is undoubtedly liable, who stood in the relation of master to the wrong-doer; he, who had selected him as his servant, from the knowledge of, or belief in his skill and care, and who could remove him for misconduct, and whose orders he

was bound to receive and obey; and whether such servant has been appointed by the master directly, or intermediately through the intervention of an agent, authorized by him to appoint servants for him, can make no difference. But the liability, by virtue of the principle of relation of master and servant, must cease, where the relation itself ceases to exist; and no other person than the master of such servant can be liable, on the simple ground, that the servant is the servant of another, and his act the act of another." And the principle thus announced has been applied in determining a large number of subsequent cases. As in the case of *Milligan vs. Wedge*, 12 *A. & Ell.*, 737, where a butcher bought a bullock in market, and employed a licensed drover to drive it home, and the drover employed a boy, by whose negligent driving the bullock was allowed to run into the plaintiff's show-room, and do considerable damage; it was held, that the butcher was not liable, as the drover exercised a distinct calling, and the boy whose negligent conduct caused the damage was *his* servant, and not the servant of the butcher, who was sought to be made responsible. So in the case of *Rapson vs. Cubitt*, 9 *M. & Wels.*, 710, where the defendant, a builder, was employed to execute certain alterations in a house, including the preparation and fixing of gas-fittings, to do which he made a sub-contract with a gas-fitter, through whose negligence the gas exploded, and injured the plaintiff; it was held that the builder was not liable, because the relation of master and servant did not exist between him and the gas-fitter, the party guilty of the negligence. And again, in the case of *Reedie vs. The Railway Company*, 4 *Exch.*, 244, where a company, empowered to construct a railway, contracted under seal with certain persons to make a portion of the line, and by the contract reserved to themselves the power of dismissing any of the contractors' workmen for incompetence. The workmen, in constructing a bridge over a public highway, negligently caused the death of a person passing beneath along the highway, by allowing a stone to fall upon him; it was held

that the power to remove the workmen reserved in the contract, was not sufficient to create the relation of master and servant between the company and the workmen, and that the former was not liable for the negligence of the latter. See also *Knight vs. Fox*, 5 *Exch.*, 721.

By these cases, the older case of *Bush vs. Steinman*, 1 *Bos. & Pul.*, 440, in which the broader doctrine was maintained, of the liability of the employer for the acts of the party employed, without reference to the fact as to whether the latter was an independent contractor or servant, has been materially modified, if not entirely overruled. And taking the latter decisions as enunciating the proper distinctions upon the subject, it results from them that the rule of "*respondeat superior*," does not apply where the party employed to do the work, in the course of which the injury occurs, is a contractor, *pursuing an independent employment,* and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done. In such case, the workmen employed by the contractor are *his* servants, and he is liable for any negligence or unskilfulness in the course of their employment, and not the party engaging the contractor to execute the work.

The greatest difficulty, however, in these cases is in determining, upon the facts, who is to be regarded as the master of the wrong-doer. This of course depends mainly upon the terms and character of the contract of employment. And whether, in the case before us, the parties engaged in the erection of the wall that fell, were the servants of Deford, depends upon the control and direction that he could rightfully exercise over them. If they were at his command and bound to obey his orders and direction, in regard to the work they were engaged in, and could be, at any time he thought proper, discharged by him, then they were his servants, and he is liable for the consequences of their negligence and mal-

feasance committed in the course of their employment. But if, on the other hand, they were at work or directing the work on the building, as independent contractors or the servants and employees of independent contractors, over whom he could rightfully exercise no such control and direction, he is not so liable. The terms and manner of employment were, of course, matters of fact for the jury; it being for the Court to declare the legal relation that existed between the parties, upon any given state of facts. And assuming the facts to be true, as stated in the record, in regard to the terms and manner of the employment of Robinson and Thomas, we think they occupied the position of independent contractors, as contradistinguished from servants; and that the journeymen bricklayers and hod carriers, having been employed by Thomas and at work under his control, were his servants, and not those of Deford.

But, although it may be that Deford is not liable for the acts of these parties by reason of any such relation as master and servant, it does not follow that he may not be responsible for the consequences resulting from the defective work allowed to be done by them. The wall was in course of erection on his premises, by his sanction, under his contract, and for his use and benefit. It was immediately fronting on a public street, in a large city, and if the testimony, offered on the part of the plaintiff, be true, it was constructed in a most defective and dangerous manner; so much so, that it excited the alarm and apprehension of hundreds of people as they passed, and caused them to avoid the pavement in its immediate front. If this be so, it certainly constituted a nuisance, for which Deford would be liable. And the fact that the wall was erected by others, under contract, and to whom he did not bear the relation of master, will not excuse him; for, as was said by LORD CAMPBELL, in *Ellis vs. The Sheffield Gas Consumers' Co.,* 2 *E. & B.,* 767, it is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. If the

contractor does the thing which he is employed to do, the employer is responsible for that thing as if he did it himself. And in all cases where a party is in possession of fixed property, he must take care that it is so used and managed that other persons shall not be injured; and whether it be managed by his own servants, or by contractors, or their servants, makes no difference in respect to his liability. "If a man has anything to be done on his own premises, he must take care to injure no man in the mode of conducting the work. Whether he injures a passenger in the street, or a servant employed about his work, seems to make no difference." *Rapson vs. Cubitt,* 9 *M. & Wels.,* 713.

In the more recent case of *Hole vs. S. and S. Railway Co.,* 6 *Hurls. & Norm.,* 488, this subject was extensively discussed, and the distinctions were stated by the Court with great precision and clearness. There the defendants, a railway company, being authorized by Act of Parliament to construct a railway bridge across a navigable river, they employed a contractor to construct the bridge in conformity with the provisions of the Act, but before the work was completed, the bridge, from some defect in its construction, could not be opened, as it was required it should be, and the plaintiff's vessel was prevented from navigating the river. It was held, that the defendants were liable for the damage thereby caused to the plaintiff. And, in the course of his judgment, POLLOCK, C. B., said: "I suggested, in the course of the argument, that where a man employs a contractor to build a house, who builds it so as to darken another person's windows, the remedy is not against the builder, but the owner of the house. It may be that the same principle applies to cases where a man is employed by another to do an act which it is the duty of the latter to do. In such cases it is the duty of the owner of the soil to inquire what is in the course of being done—to know what is the plan—to see that the materials are good, and to take care that no mischief ensues. So here it was the duty of the company to see how the contractor

was about to construct the bridge. They ought to have taken care to ascertain what he was about to do, what materials he would use, and to have seen that the specifications and the materials were such as would ensure the construction of a proper and efficient bridge." And BARON WILDE was even more explicit in stating the ground upon which the defendants were liable. He said: "The distinction appears to me to be that, when work is being done under a contract, if an accident happens, and an injury is caused by negligence in a matter entirely collateral to the contract, the liability turns on the question whether the relation of master and servant exists. But when the thing contracted to be done causes the mischief, and the injury can only be said to arise from the authority of the employer, because the thing contracted to be done is imperfectly performed, there the employer must be taken to have authorized the act, and is responsible for it. The present defendants were authorized to take land for the purpose of their railway, and to build a bridge over the Swale. Instead of erecting the bridge themselves, they employed another person to do it. What was done was done under their authority. In the course of executing their order, the contractor, by doing the work imperfectly, obstructed the navigation. It is the same as if they had done it themselves. It is not distinguishable from the case where a land owner orders a person to erect a building upon his land which causes a nuisance. The person who ordered the structure to be put up is liable, and it is no answer for him to say that he ordered it to be put up in a different form."

We have thus largely quoted from the opinions of these learned Judges, because the reasoning employed by them is peculiarly apposite to the case before us, and the distinction they take is well maintained by authority. *Ellis vs. Sheffield Gas. Consumer's Company*, 2 *El. & Bl.*, 767; *Pickard vs. Smith*, 10 *Com. B. N. S.*, 470; *Gray vs. Pullen & Hubble*, 34 *Law Journal*, 265; *Congreve vs. Morgan*, 18 *N. Y.*, 84.

But it is contended, on the part of the defendants, that the

wall was erected of good materials, and with ordinary skill and care, and that its fall was occasioned not by negligent or defective work, but by the operation of extraordinary causes; and evidence was offered to show what those causes were.

Whether the causes assigned were, in fact, in operation, and of such extraordinary character, and adequate to produce the effect alleged, without the fault of the defendants, were questions of fact for the jury. And if it be true, that by the operation of extraordinary causes, against which ordinary skill, care and foresight could not provide, the wall, erected in an ordinarily substantial and secure manner, was overthrown, it is clear the defendants would not be liable. Justice forbids that a party should be held liable under such circumstances. *Blyth vs. The Birmingham Water Works Co.*, 36 *Eng. Law and Eq. Rep.*, 506; 20 *Md.*, 297.

Having thus stated the general principles and distinctions that must control the case, we now proceed to apply them to the prayers before us, of plaintiff and defendants.

The first prayer of the plaintiff we think objectionable, because the term "agents," as employed in it, was not sufficiently defined to avoid misleading the jury. What construction the jury may have placed upon this prayer it is difficult to conjecture. As the plaintiff's right to recover is predicated of the negligence and defaults of the defendants' agents, the facts should have been stated, for the finding of the jury, giving rise to the relation of principal and agent or master and servant, in such a case as this. In leaving the jury to speculate as to what state of facts would constitute the parties employed, the servants or agents of Deford, in the sense in which he would be liable for their acts and negligence, was erroneous. And as the plaintiff's second prayer is based upon the same hypothesis as the first, that is objectionable also. The Court was in error therefore in granting either of these prayers in the form in which they were proposed.

The first and second prayers of the defendants were properly rejected.

The action is brought in the name of the State as legal plaintiff, for the use of such of the children of the deceased as may have been actually damaged by her death; and those who have joined in bringing the suit are those, as we may presume, who supposed themselves damaged; and if there be others who have not joined, it cannot prejudice the rights of those who have. Nor is it a matter of which the defendant Deford can complain, that all the children are not joined, for he is subject to but one action, for and in respect of the same subject matter of complaint; and the jury can only " give such damages as they may think *proportioned to the injury,* resulting from such death, to the parties respectively, *for whom and for whose benefit such action shall be brought;"* and not to all the children, or even to all those who might or could show themselves injured by the death, unless they join in bringing the action. 1 *Code,* 449, *Art.* 65, *sec.* 2. And the joinder of a party, as *cestui que use,* who may not be entitled to a portion of the damages awarded, should not be allowed to defeat or prejudice the rights of others who may be entitled. It is for the jury, in all such cases as this, to say whether the condition of the child, without reference to age, is one of such dependence upon the deceased parent, as to entitle it to damages in respect of the injury suffered.

There was no error in rejecting the defendants' third, fourth and fifth prayers, if for no other reason, because the propositions they embrace are contained in the sixth and seventh prayers of the defendants, which were granted. The Court should not be required to repeat or duplicate its instructions, but the effort should be to render them as free from involution and complexity as possible.

As the hypothesis of the defendants' ninth prayer is more fully and explicitly stated in the twelfth, there was no error in refusing to grant it; but we think the twelfth prayer of the defendants unobjectionable, and that it should have been granted. The hypothesis of it brings it fully within the rule of exemption deduced from the authorities.

Deford *vs.* The State, use of Keyser, *et al.*

The tenth prayer was properly refused, because it proceeds upon the theory that the defendants were not responsible for the negligence of their agents and servants, if they were skilful and competent workmen, unless their negligence was committed in consequence of some special direction given, or omitted to be given, by the defendants. This can be maintained upon no principle applicable to this case.

It is sufficient for us to say, that there was no error committed in rejecting the defendants' fifteenth and seventeenth prayers. And, as to the eighteenth, we think the Court was right in rejecting that also ; because, by its terms, it excluded from the consideration of the jury facts that might have been material to the plaintiff's right to recover. It sought to exempt Deford from responsibility, and to exclude the plaintiff's right to recover for and in respect of the defective wall and cornice, *as a nuisance.* As we have said, whether Robinson was an agent or an independent contractor, if the wall and cornice were so constructed as to be dangerous, and therefore a nuisance, Deford would be liable for the consequences resulting therefrom ; and the prayer is objectionable for excluding from the jury that aspect of the case.

There being error in granting the two prayers of the plaintiff, and also in rejecting the twelfth prayer of the defendants, it follows that the judgment appealed from must be reversed, and the cause remanded on *procedendo,* for new trial ; but, as the verdict of the jury was in favor of Robinson, one of the defendants, and there being no appeal from the judgment thereon, by the plaintiff, he stands acquitted, and cannot be again required to appear and abide the result of another trial. The further prosecution of the cause, therefore, must be against Deford alone.

*Judgment reversed and*
*procedendo awarded.*

(Decided 19th February, 1869.)