(Decided June 28th, 1898).

---

## JOSEPH P. SMITH *vs.* MARY BENICK and LOUIS BENICK—JOSEPH P. SMITH *vs.* LOUIS BENICK.

*Negligence—Independent Contractor—Balloon Ascension From a Pleasure Resort.*

Where the proprietor of a pleasure resort employs a competent aeronaut to make balloon ascensions from the grounds, and the method of making the same is not one likely in itself to cause injury to spectators and the aeronaut is an independent contractor, supplying his own servants and using his own discretion, the proprietor of the place is not liable to a third party injured by the casual negligence of the servants of the aeronaut.

Two appeals from the Court of Common Pleas (HAR-LAN, C. J.) The defendant's first and second prayers, which were rejected, were as follows :

1st. That as it appears from the uncontradicted evidence in the cause that William H. Hanna was employed by the defendant, Joseph P. Smith, to conduct a series of balloon ascensions on land leased to the said Smith for a fixed sum of money, at one of which ascensions the alleged injury to the plaintiff, Mary Benick, occurred by reason of the accidental fall of a pole belonging to said Hanna, and used by him and his employees in effecting said ascension, and that the said Hanna was, by the terms of said employment, a contractor pursuing an independent employment requiring special skill and knowledge, and that by the terms of the said contract the said Hanna was free to exercise his own judgment and discretion as to the means and assistance that

he might think proper to employ about the work of said ascension, exclusive of the control and direction in this respect of the said Smith, and that the said Hanna was a well-known and responsible balloonist, the said Smith is not liable for the alleged negligence or unskilfullness of the said Hanna or his employees in effecting said ascension, or in managing said pole, and that the verdict of the jury must, therefore, be for the defendant, Joseph P. Smith. (Refused).

2nd. That if the jury shall find, from the weight of the evidence in the cause that William H. Hanna was employed by the defendant, Joseph P. Smith, to conduct a series of balloon ascensions on land leased to the said Smith for a fixed sum of money, at one of which ascensions the alleged injury to the plaintiff, Mary Benick, occurred by reason of the accidental fall of a pole belonging to the said Hanna, and used by him and his employees in effecting said ascension, and that the said Hanna was, by the terms of said employment, a contractor pursuing an independent employment, requiring special skill and knowledge, and that by the terms of the said contract the said Hanna was free to exercise his own judgment and discretion as to the means and assistance that he might think proper to employ about the work of said ascension, exclusive of the control and direction in this respect of the said Smith, and that the said Hanna was a well-known and responsible balloonist, the verdict of the jury must be for the defendant, Joseph P. Smith, even although the jury may further find that the said pole was allowed to fall upon the plaintiff, Mary Benick, by the negligent or unskillful conduct of the employees of said Hanna. (Refused).

The jury returned a verdict for $3,000 in the case of Mary Benick and Louis Benick, her husband, against the defendant, and a verdict for $700 in the case of Louis Benick against the defendant.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Feb. 8 and 9, 1898).

*Geo. Dobbin Penniman* and *Francis K. Carey* (with whom were *Steele, Semmes & Bond* on the brief), for the appellant, cited: *Francis* v. *Cockrell*, L. R. 5 Q. B. 501; *Currier* v. *Boston Amusement Hall*, 135 Mass. 411; *Nave* v. *Flack*, 90 Ind. 205; *Gilbert* v. *Nagle*, 118 Mass. 278; *People's Bank* v. *Morgolofski*, 75 Md. 432; *Turnpike Co.* v. *Cassell*, 66 Md. 430; *City, &c., Co.* v. *Moores*, 80 Md. 348; *Hilliard* v. *Richardson*, 3 Gray, 349; *Linton* v. *Smith*, 8 Gray, 147; *Forsyth* v. *Hooper*, 11 Allen, 419; *Deford* v. *State, use of Keyser*, 31 Md. 179; *Knotternus* v. *North Park R. R. Co.*, 93 Mich. 348 (S. C., 17 Am. Rep. 726); *Blake* v. *Ferris et al.*, 5 N. Y. 48; *Pack* v. *Mayor, &c., of New York*, 8 N. Y. 222; *Kelly* v. *Mayor, &c., of New York*, 11 N. Y. 432; *Cunningham* v. *International R. R. Co.*, 51 Tex. 503.

*William Colton* (with whom was *Howard Tebbs* on the brief), for the appellees, cited: *Sweeney* v. *Old Colony R. Co.*, 10 Allen, 372; *Benson* v. *Traction Co.*, 77 Md. 535; *Cooley on Torts*, 718; *Bushnell on Personal Injuries*, sec. 66; *Powers* v. *Harlow*, 53 Mich. 514; *Davis* v. *Central Con. Society*, 129 Mass. 367; *Unitas* v. *Steamship Dresden*, 62 Fed. Rep. 438; *Pickard* v. *Smith*, 10 C. B. N. S. 470; *Poe's Pldg.*, sec. 485, 508; *Cortis* v. *Kiley*, 153 Mass. 123; *Richmond, etc., Co.* v. *Moores*, 27 S. E. Rep. 70; *Conradt* v. *Clauve*, 93 Ind. 476.

PAGE, J., delivered the opinion of the Court.

The appeals in these cases are taken from judgments in favor of the appellees for injuries to Mary Benick, alleged to have resulted from the negligence of the appellant in conducting a balloon ascension. The appellant was the lessee of a tract of land near Baltimore City. He had fitted it up, as a pleasure resort, with bowling alleys, shooting gallery and restaurant, and besides furnished various other attractions such as fireworks, acrobatic performances, and other things of a like nature. These were extensively advertised,

so that many persons were drawn thither ; the daily attendance on week days averaging from 1,000 to 1,500 persons, and three times that number on Sunday. The proprietor charged no fee for admission, but relied for his profits from sales, the hiring of boats and the rentals of places for carousel, shooting gallery, &c.

Among other things designed to attract visitors were the balloon ascensions, and it was at one of these that Mrs. Benick was injured. The ascension that day was conducted by a man named Hanna, who was an experienced and competent balloonist. Under his agreement with the appellant, " Hanna was to furnish and pay for all the material and appliances used in making the ascensions, and in addition thereto was to employ and pay all of the men required to conduct the ascensions," and the appellant was to have no part to perform except to furnish the field, pay the price and name the hour for the ascension. The method of the ascension was that usually adopted. Two poles of proper height were first erected and maintained in position by guy lines. A rope passed from the top of one pole to that of the other, and from this by means of a loop, the balloon was kept in position while being inflated. When it was filled, the rope was loosened from one of the poles, and allowed to slip over the top of the balloon, thus releasing it. When the rope over the balloon (called the ridge rope) is loosened, one of the poles falls to the ground. A guard rope intended to keep the people off, is placed around and about the balloon. There was evidence that the guard rope enclosed a space on this occasion about the balloon in the shape of the lid of a coffin, so that if the supporting poles did not fall in the longer portion of the space, they were of such length that of necessity they would fall outside. On the occasion of the accident the pole had fallen without causing injury (whether it fell inside of the enclosure or not there was no proof to show), and it was while the effort was being made to re-erect it that it fell, striking a carpenter's horse and bounding therefrom, injured Mrs. Benick.

By the terms of the contract already stated, the relation of Hanna to the appellant was that of an independent contractor. He was free "to exercise his own judgment and discretion as to the means and assistants he might think proper to employ about the work, exclusive of the control and direction in this respect" of the appellant. *Deford* v. *Keyser*, 30 Md. 203. So regarding him, the general rules applicable are well settled. First, when an owner and proprietor of land employs a competent person to do work, which of itself is not a nuisance, or of which the necessary or probable effect would not be to injure others, and such person is an independent contractor, the employer is not responsible for such negligence as is entirely collateral to, and not a probable consequence of the work contracted for. *Cooley on Torts*, 547 ; *St. Paul Water Co.* v. *Ware*, 16 Wall. 566 ; *Deford* v. *State, use Keyser, supra ; Suburban Co.* v. *Moores*, 80 Md. 348 ; *Randleson* v. *Murray*, 8 Adol. and Ell. 109.

And secondly, when a person is on the premises by invitation, it is the duty of the occupant and owner to exercise due and reasonable care that his premises shall be reasonably safe, and that no concealed perils shall environ the visitor, while he himself is acting in the exercise of due and reasonable care. *Cooley on Torts*, 718 ; *Sweeny* v. *Old Colony R.*, 10 Allen, 372 ; *Bennett* v. *R. R. Co.*, 102 U. S. 580 ; *Powers* v. *Harlow*, 53 Mich. 507 ; *Davis* v. *Central Society*, 129 Mass. 367. These rules are succinctly stated in *Pickard* v. *Smith*, 10 C. B. N. S. 468, as follows : " If an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not answerable   *   *   *   The rule, however, is not applicable to cases in which the act which occasions the injury is one which the contractor is employed to do ; nor by a parity of reasoning in which the contractor is entrusted with the performance of a duty incumbent upon his employer and neglects its fulfillment, whereby the injury is occasioned."

The accident in this case is not attributable to any defect in the plan of ascension, nor to anything growing out of what was intended or was likely to occur in the usual process of sending up the balloon.   The cause of it the record shows, was proved to be as follows : " On the afternoon of the accident, August 29th, 1895, the balloon was in process of inflation and the two supporting poles were in position, when a violent thunder gust came up and so disarranged the balloon as to cause it to veer over and permit a supporting pole to fall to the ground, delaying the ascension but causing no injury, and no proof was offered tending to show that the pole fell without the ropes.   In order to get ready for a new inflation of the balloon after the thunder gust ceased it became necessary to re-erect the fallen pole. A carpenter's horse was placed under it at convenient stages to support it in the elevation.   When the top of the pole was at a height, variously estimated from six or eight inches to five or six feet higher than the horse it fell, striking the horse in its descent, which it probably upset, and slid or bounded to the ground ; as it struck the ground it either fell or bounded on the heel of the plaintiff, Mary Benick, causing the injury complained of."

It is not contended there was anything in the sending up of the balloon, or in the needed equipment for such an event, that created concealed dangers from which it became the duty of the proprietor to shield the careless or unwary by the exercise of extraordinary precautions ; and there is nothing in the record to show that in the appointed and usual method of ascension, there was anything dangerous to persons using reasonable care.   It is clear, however, from the admitted facts, as we have quoted them from the record, that Mrs. Benick received her injury in consequence of circumstances which did not involve the safety of the ordinary method.   The poles had fallen without damage, and the operator then introduced f his own accord, without the knowledge of the appellant, a new appliance not con-

templated by the usual method, that is, a carpenter's horse, and certainly not within any consent or agency of the appellant. If it was careless to make use of the horse, or if Hanna or his agents were guilty of carelessness in the manner in which it was used, the appellant cannot be held liable, it being shown that Hanna was an independent contractor.

The cases of *Conradt et al.* v. *Clauve*, 93 Ind. 476, and of *Richmond & M. R. Co.* v. *Moores, &c.*, 27 S. E. R. 70, relied on by the appellee, are distinguishable from this ·case. In the former the defendant was proprietor and manager of the fair grounds. Parts of the ground were allotted to target shooting. The plaintiff being ignorant of the danger hitched his horse where it was shot. Here was the concealed danger. The plaintiff was entitled to notice of it, for the reason that the defendant in the discharge of his duty to make the place reasonably safe to those who came on his ground by invitation, was bound to notify them of dangerous places, and that not to do so was negligence. In the other case cited, there was no guard-rope and no notification made, that the poles would fall when the balloon went up.

In *Knottnerus* v. *R. R. Co.*, 93 Mich. 348, a person was injured while on a roller-coaster. It was said in the opinion of the Court, "a roller-coaster is not a snare or an explosive. It is in and of itself notice of its character and purpose. Its presence and operation involve no danger to those who keep away from it, nor does its enjoyment necessarily involve injury. It cannot be said that by granting permission to operate a switch-back at North Park, the defendant was guilty of negligence * * * They do not thereby become insurers of the persons while in attendance upon the attraction, or responsible for the carelessness of the operators." This case is cited as being pertinent to the questions involved.

It follows from what has been said, the Court committed error in granting the plaintiff's first prayer and refusing the

defendant's first and second.   The judgment therefore must be reversed and new trial awarded.

*Judgment reversed and new trial awarded.*

(Decided June 28th, 1898).

BRYAN, J., dissented and delivered the following opinion:

These two cases involve the same facts.   Mary Benick, the wife of Louis Benick, was injured at a balloon ascension which was conducted by the procurement of Smith, the appellant, at a place of public resort, possessed and occupied by him.   A suit was brought by Benick and wife; and another by Benick alone.   A judgment being rendered in each suit, Smith has appealed to this Court.

The place where the injury occurred is a tract of land containing about twenty-seven acres, a short distance beyond the limits of the city of Baltimore.   It is known as Point Breeze; and is supplied with amusements and entertainments of various kinds suitable for attracting large numbers of visitors who are seeking recreation and enjoyment.   It is stated in the evidence that large numbers of men, women and children visited the place; the daily assemblage during the week, being from a thousand to fifteen hundred persons, and about three times that number on Sundays.   No charge was made for admission to the grounds, the proprietor deriving his profit from the money which the visitors would spend in some of the many ways offered for their enjoyment.   The attractions of the place were advertised through the public press.   Several balloon ascensions had been made.   These were made by one Hanna, a professional balloonist, who was employed by Smith to make them at a fixed price.   It was agreed in the contract of employment that Hanna was to furnish and pay for all the material and appliances used in making the ascensions, and to employ and pay all the men required to conduct them, and to supervise them ; Smith having no part to perform under the contract, except to designate

the time and place for the ascension, and to pay the con-
tract price.   On an afternoon in August, eighteen hundred
and ninety-five, while preparations were going on for a bal-
loon ascension, the female plaintiff was severely injured.
There is considerable conflict in the evidence regarding
the circumstances attending this occurrence.   We will
state the substance of the testimony on the part of the
plaintiffs.   It was, that poles about thirty-three feet high
and weighing between six hundred and nine hundred
pounds were used to keep the balloon in an upright posi-
tion; and that it was intended that these poles, or one of
them, should fall when the balloon went up; that a rope
was stretched around and about the space occupied by the
balloon; that this space was not circular or oval, but in the
shape of a coffin, so that if the poles should not fall in the
longer portion of it, they would necessarily fall outside of
the ropes; that while preparations were going on for inflat-
ing the balloon one of the poles fell; and that while per-
sons engaged for the purpose were attempting to erect the
pole again, it fell a second time; and this time it fell out-
side of the ropes, and struck the female plaintiff who was
beyond the enclosure, causing her a serious and painful in-
jury.   It was also testified, that if the enclosed space had
been oval or circular the pole could not have fallen on the
outside; meaning, we suppose, that if the breadth of the
space had been equal to its length.   The testimony on the part
of the defendant contradicted these statements; particularly
in reference to the position of the female plaintiff at the
time she was hurt, and in reference to the shape of the
enclosed space.   It was testified also that the rope was
placed around the enclosed space at the suggestion of
Smith's manager.

The Court on the prayer of the plaintiffs gave instruc-
tions to the jury on the hypothesis that they would find
the truth of the facts contained in the testimony offered by
them.   It is necessary for us to inquire what were the
rights of the plaintiffs, and the responsibilities of the de-

fendant on this hypothesis. In the legitimate pursuit of his business, the defendant provided attractions on his grounds for the purpose of inducing large numbers of people to visit them. If, after assembling them, he should wilfully expose them to dangers resulting in loss of life and limb, his conduct would be highly criminal. If he should not take reasonable care to protect them from such dangers he would be censurable, although in a much less degree. Humanity and social duty would require that he should not negligently injure, or expose to injury, persons who by his invitation were visiting his premises. Now the fall of a pole, thirty-three feet long and weighing six hundred pounds, in a crowd of a thousand people consisting of men women and children, would certainly be very dangerous. Every reasonable precaution ought to be taken to avert such a disaster, and to cause the pole to fall where it would inflict no injury. According to the evidence for the plaintiff, if the pole had fallen within the enclosure it could not have reached the person who was injured. It would have been a very easy matter to make the enclosure so large that the pole must have fallen within its limits. A circle with a radius of forty-feet would have been amply large enough to receive the pole in whatever direction it might fall. A simple provision of this kind would give adequate protection to the numbers assembled to witness the spectacle prepared for their amusement; while the neglect of it might cause the loss of many lives. To require that the proprietor of the grounds should furnish some protection of this kind could hardly be considered as imposing an onerous burden upon him. His duty under such circumstances is fully settled by a very great weight of authority. The result of the decided cases is well summarized in *Cooley on Torts* (2nd edition) page 718. " It has been stated in a preceding page, that one is under no obligation to keep his premises in a safe condition, for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises

whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." Many illustrations are given by the learned author in the text and in the notes. Among other cases, he cites one, where persons holding a fair and erecting structures for the purpose were held liable for injuries to their patrons caused by the breaking down of the structures, through such defects in construction as the exercise of proper care would have avoided. The possessor of land has no power to throw off this duty by making a contract with another person. As he cannot erect structures or perform feats fraught with danger to his visitors, without taking due care for their safety, it follows by necessary consequence that he cannot employ or permit another person to do those things, without providing the same safeguards. He cannot give sanction to an act which would be unlawful if done by himself. He would be in every respect responsible for that which he employed another person to do. It would be his own act, with all its consequences and liabilities. On this point we may refer with profit to *Pickard* v. *Smith*, 10, Common Bench, new series, 470. Smith was the lessee and occupier of refreshment rooms, with a cellar attached which was used for keeping coals. He employed a coal merchant to put a supply of coals in the cellar; the merchant, for that purpose, opened a trap door and negligently left it open and unguarded; in consequence whereof, the plaintiff, without any fault on his part, fell in and was injured. In delivering judgment for the plaintiff the Court said: " Unquestionably, no one can be made liable for an act or breach of duty, unless it be traceable to himself or his servant or servants in the course of his or their employment. Consequently, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not answerable. To this effect are

many authorities which were referred to in the argument. That rule is, however, inapplicable to cases in which the act which occasions the injury, is one which the contractor was employed to do; nor, by a parity of reasoning, to cases in which the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfillment whereby an injury is occasioned. Now, in the present case, the defendant employed the coal merchant to open the trap in order to put in the coals; and he trusted him to guard it whilst open, and to close it when the coals were all put in. The act of opening it was the act of the employer, though done through the agency of the coal merchant; and the defendant, having thereby caused danger, was bound to take reasonable means to prevent mischief. The performance of this duty he omitted, and the fact of his having intrusted it to a person who also neglected it, furnishes no excuse either in good sense or law." In *Ellis* v. *Sheffield Gas Company*, 2 Ellis & Blackburn, 769, LORD CAMPBELL said : " It would be monstrous, if the party causing another to do a thing were exempted from liability for that act, merely because there was a contract between him and the person immediately causing the act to be done." In *Rapson* v. *Cubitt*, 9 Meeson & Welsby, 714, it was said : " The injuries done upon land or buildings are in the nature of nuisances, for which the occupier ought to be chargeable, when occasioned by any acts of persons whom he brings upon the premises. The use of the premises is confined by the law to himself, and he should take care not to bring persons there who do any mischief to others." All of these cases were cited with approval by this Court in *Deford* v. *State*, 30 Md. 179. In this last case, there was a full discussion at the bar and on the bench of the responsibilities of the possessors of real property. The wall of a house belonging to Deford had fallen and killed a person who was passing along the street. CHIEF JUSTICE ALVEY in an opinion of great fullness and ability exhausted the whole subject. It was alleged that the wall was constructed in a most de-

fective and dangerous manner. The learned Judge said : "If this be so, it certainly constituted a nuisance, for which Deford would be liable. And the fact that the wall was erected by others, under contract, and to whom he did not bear the relation of master, will not excuse him ; for, as was said by LORD CAMPBELL, in *Ellis* v. *The Sheffield Gas Consumers' Co.*, 2 E. & B. 767, it is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. If the contractor does the thing which he is employed to do, the employer is responsible for that thing as if he did it himself. And in all cases where a party is in possession of fixed property, he must take care that it is so used and managed that other persons shall not be injured ; and whether it be managed by his own servants, or by contractors, or their servants, makes no difference in respect to his liability. ' If a man has anything to be done on his premises, he must take care to injure no man in the mode of conducting the work. Whether he injures a passenger in the street, or a servant employed about his work, seems to make no difference.' " I do not think it necessary to continue the discussion of this question ; especially as it was very recently before us in *Evans* v. *Murphy, ante,* p. 498, when Deford's case was fully approved.

The instructions given to the jury on the part of the plaintiffs fairly left to them the question whether the defendant was guilty of a want of ordinary care and prudence in the particulars which we have mentioned ; and the further question whether the female plaintiff was guilty of contributory negligence. The rejected prayers offered by the defendant sought to exculpate him, on the ground that he had employed an independent contractor to conduct the balloon ascension, and that he was a well-known and responsible balloonist. It will be seen that in my opinion the judgment ought to be affirmed.

(Filed June 28th, 1898).