# PHILADELPHIA, BALTIMORE & WASHINGTON RAILROAD COMPANY *vs.* ADERINA S. MITCHELL.

*Liability of Employer for Negligence of Independent Contractor—Making Highway Dangerous—Falling of Hammer from Bridge Upon Pedestrian in the Street—Fright or Mental Suffering Resulting from Negligence—Physical Impact Causing Fright.*

When work is being done by an independent contractor, the employer is not liable for an injury caused by the contractor's negligence in a collateral matter, but he is liable if the injury is caused by the thing contracted to be done, or if it be such as might have been anticipated as a probable consequence of the work let out to the contractor, and no precaution is taken to prevent the injury.

The duty to refrain from interfering with the right of the public to the safe and unimpeded use of highways, is one of which an employer cannot divest himself by committing the work to a contractor.

Whether an injury might reasonably have been anticipated as a probable consequence of the work let out to a contractor is a question of fact for the jury.

While plaintiff was passing in a city street under a bridge that was being constructed by independent contractor for a railway company, she was struck by a hammer, or some other heavy object, which fell from the trestle. *Held*, that the jury was properly instructed that it was the duty of the railway company to see that the street was safe for travellers at that point during the construction of the bridge, and if it negligently failed to do so, and plaintiff's injury was caused by such negligence, plaintiff is entitled to recover, and that it is no defense that the bridge was constructed for the railway company by an independent contractor.

There can be no recovery of damages for mere fright or mental suffering, caused by defendant's negligence, when there has been no physical impact or injury to the plaintiff.

But when a physical impact causes a fright which directly results in an injury, damages may be recovered for such injury.

Plaintiff, a woman, was walking in a street under a bridge in course of construction, with an umbrella raised over her head, when a hammer fell from the bridge and struck and broke her umbrella. She was thrown back by the blow upon the umbrella and she also jerked herself away with a violent wrench, on account of the fright thereby occa-

sioned. Soon afterwards, she suffered a miscarriage and also developed an aneurism of the abdominal aorta. The medical evidence was that this aneurism was caused by the accident. *Held*, that the striking of the umbrella in plaintiff's hand was a physical impact upon her, and that this evidence is legally sufficient to go to the jury for them to determine whether or not the aneurism, which consisted of a rupture of one of the walls of the artery, was produced by the wrench or twist of the plaintiff's body when the hammer fell, and also whether the blow of the hammer on the umbrella caused the movement of her body.

*Decided March 31st, 1908.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.), where there was a verdict for the plaintiff for $2,000.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and WORTHINGTON, JJ.

*Thos. H. Robinson*, for the appellant.

*J. J. Archer* and *Wm. Pepper Constable*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee recovered a judgment against the appellant in the Circuit Court for Harford County for damages for injuries inflicted on her, while walking along a much used public street in the city of Havre de Grace, by the falling of a hammer from an overhead bridge in course of construction on the appellant's line of railway. From that judgment this appeal was taken. There is but one bill of exceptions in the record and that presents for our review only the rulings of the Court below on the prayers offered at the close of the case.

The declaration contains two counts both of which aver that the appellant company owned and operated a railroad from Pennsylvania into Maryland, and at the time of the injury complained of had acquired a new right of way through the city of Havre de Grace and under the authority of ch. 116 of the Acts of 1904 and with the consent of the city was engaged in constructing along its new right of way an iron

bridge over a much traveled street, called Stokes street, in said city; and that the plaintiff, while walking along said street, in the exercise of due care, under the bridge then in course of construction, was struck and severely injured by a hammer or other missile which fell therefrom.    The first count avers generally that the fall of the hammer was due to the negligence of the company in constructing the bridge.·    The second count avers that the nature of the construction of the bridge was such that blocks of wood, iron plates, bolts, rivets and other things used in connection therewith were continually falling from the bridge to the street beneath it and endangered travel thereon and it became and was the duty of the company to guard the work for the protection and safety of persons travelling upon the street but that it failed to discharge said duty and the plaintiff was injured by reason of such failure.    To this declaration the company as defendant pleaded the general issue.

The undisputed evidence sustains the allegations of the declaration as to the existence of the defendant company and its authority to construct the bridge and that the construction was in progress on September the 18th, 1905, when the alleged injury occurred to the plaintiff.    It also appears without contradiction that Stokes street was a much traveled public street of the city of Havre de Grace and that the bridge crossed it at an elevation of about fourteen feet by a single span seventy feet long composed of four parallel metal girders.

There is evidence in the record tending to show that in the construction of such bridges, when the workmen are engaged in riveting the ties and braces between the girders composing the span they are compelled to work with great rapidity in order to put the rivets in place and clench them while at a white or red heat, and as a result rivets, tools and other objects handled with such rapidity frequently fall to the ground beneath and render it unsafe for travel unless properly guarded.    There is like evidence that in the construction of the bridge now in question such objects did in fact frequently fall upon the street below it and that no precautions

were taken to hinder the public from passing under the bridge or to prevent the falling of the objects from it. There is also evidence tending to show that the parties in charge of the construction of the bridge did use suitable means to protect from injury the public passing under it, by the presence of watchmen and by barricading from time to time the particular portion of the street lying under the part of the bridge on which the work then was being done. We do not notice in detail the conflicting evidence of the many witnesses who testified in reference to these facts because the weight of the evidence was a matter for the jury.

The only evidence in reference to the occurrence of the accident by which the appellee claims to have been injured is her own testimony. According to her account she went down Stokes street in the early afternoon on her way to Dr. Crothers' office to pay him a bill. She said that as she was passing under the bridge in question she noticed a child there playing with a little wagon, and just then, to use her own language, "I had my umbrella raised over my head and all at once I heard a crash and a big hammer, that looked like a blacksmith's sledge hammer to me, fell and struck my umbrella and fell right down at my feet and I throwed myself away from it and I felt something tear in my side—just like something teared—and everything got dark before me for a minute and I felt faint and sick at my stomach like and I began to think of the child and I wondered if he was hurt for I got the impression there was more fell and I thought of the child. I looked back and my mind began to clear and then I was out from under the bridge and I saw the child was all right:" She further said that the umbrella was torn and one of its ribs broken by the impact with the hammer, and that she thought it was the hammer striking her umbrella and not its striking the walk at her feet which caused her to throw herself away from it, but that it all happened at almost the same instant.

According to her further testimony she went on to Dr. Crothers' office and paid her bill, mentioning the fact of the

accident to him and he congratulated her on her escape. She then returned to her home. By the time she got there she was suffering much pain and was compelled to lie down at once. She continued to suffer greatly and on the next day spit five or six large mouthfuls of blood. In a few days she was compelled to go to bed and remain there for about three weeks and has ever since then been in poor health and subject to frequently recurring spells of violent internal throbbing which incapacitate her from performing her ordinary domestic duties. Her own testimony and that of her acquaintances was that prior to her injury she had been a healthy woman with an unusual degree of physical vigor. She also testified to having been in an early stage of pregnancy when injured and to have suffered a miscarriage five days thereafter. There was also the testimony of four physicians who had attended or examined her professionally since her injury tending to show that she had an aneurism of the abdominal aorta of a serious and incurable character which was first recognized about a week after her injury and might have been caused by it.

Defendant proved that the bridge was constructed by Brant & Stewart, a firm of bridge constructors of large experience, under a contract for the construction of all the bridges in connection with the change of the company's line between Principio and Oakington, except the one over the Susquehanna river; and that by the terms of the contract, the contractors furnished all of the materials and performed all of the labor required for the bridges. There was also evidence produced by the defendant tending to show that the riveting on the portion of the bridge under which the plaintiff was passing when injured had been entirely completed before the 18th of September, and that when she was injured the workmen were engaged in riveting on the portion of the bridge over the opposite side of the street from that along which she was passing.

The plaintiff offered three prayers all of which were granted. The first states the measure of damages in the form usual in such cases and is free from objection. The second adopts the

theory of the second count of the declaration and in substance directs the jury that if they find that Stokes street was a public street of the city and that the defendant after having obtained authority from the State and the assent of the city for the construction of the bridge proceeded with the work of construction in such manner as to render the street under it dangerous for travel by the public, it was the duty of the defendant to safeguard the street during the construction for the protection of persons lawfully travelling thereon or to see that the same was done, and if they also find that the defendant negligently failed to do so and in consequence thereof the plaintiff was injured by the falling of a heavy iron hammer from the bridge while in the course of construction and that the injury was caused directly by the said negligence of the defendant their verdict should be for the plaintiff. The third prayer instructed the jury that if they found the facts stated in the second prayer it was no defense to the action that the bridge was constructed for the defendant by the firm of Brant & Stewart as independent contractors.

The defendant offered eleven prayers all of which were refused except the 7½ prayer which was granted. Of the rejected prayers, the 1st, 2nd and 3rd prayers sought to have the case taken from the jury for want of legally sufficient evidence to enable the plaintiff to recover. The 4th, 9th and 10th prayers were based upon the theory that the finding by the jury, of the employment of an independent contractor to construct the bridge would discharge the defendant from liability for the injury caused by the falling hammer. The 5th and 8th prayers denied the right of the plaintiff to recover for the reason that the true cause of her disease was a matter of speculation and was not shown by the evidence to have been the result of the injury from the fall of the hammer. The 6th prayer denied the right of the plaintiff to recover for any injury resulting from shock unaccompanied by physical injury and the 7th prayer denied the right of recovery if the jury found that the plaintiff's injuries were the result of inevitable accident.

The record contains no exceptions to evidence nor any special exception to any of the prayers for want of evidence to support them. We find no error in the action of the learned Judge below on these prayers.

The two substantial grounds of defense presented by the defendant's prayers, and relied on in argument by its counsel at the hearing of the appeal, were first that of the employment of an independent contractor to construct the bridge and, secondly, the exemption of the defendant from liability for injury suffered by the plaintiff from fright unaccompanied by physical injury.

The question of the extent to which the employment of an independent contractor to do work, placed entirely under his control, will relieve the employer from liability for injuries resulting to third persons has not only been much discussed by other tribunals but has been fully considered, in the light of the authorities applicable to it, and passed upon by this Court in a number of cases, among which are *Deford* v. *State, use of Keyser,* 30 Md. 179; *City & Suburban R. R. Co.* v. *Moores,* 80 Md. 348; *Bonaparte* v. *Wiseman,* 89 Md. 12, and *Samuel* v. *Novak,* 99 Md. 558. As a result of these cases it may now be said to be settled in this State that although, when the work is being done by an independent contractor the employer will not be liable for an injury caused by negligence in a matter collateral to the contract, he will be liable if the injury be caused by the thing contracted to be done, or if it be such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, and he took no precaution to prevent it. The principle thus broadly stated embraces the subordinate proposition, separately discussed in many cases and especially appropriate to the one now before us, that the duty to refrain from interfering with the right of the public to the safe and unimpeded use of highways and streets is one of which an employer cannot divest himself by committing work to a contractor.

In *Bonaparte* v. *Wiseman, supra,* we further decided that the question whether the injury might reasonably have been

anticipated as a probable consequence of the work contracted to be done was one of fact for the jury.   The plaintiff's second and third prayers, which were granted, stated the law of the case in accordance with the decisions to which we have referred.

The weight of authority both of text books and of decided cases supports the view that there can be no recovery of damages for mere fright or mental suffering, caused by negligence, unconnected with physical impact or injury.   This conclusion has generally been reached in reliance upon the remoteness of the damage as well as the inexpediency of opening the door to claims difficult of precise proof or disproof and from their nature easy of simulation and liable to exaggeration.   Many of the cases hold not only that there can be no recovery of damages for mere fright without impact or injury but also that there can be none for actual physical injury resulting from such fright because such results are merely evidence of the degree of the fright or the extent of the damages resulting from that cause.   From the last mentioned proposition there has been a positive dissent in some recent cases which hold that there can be a recovery for physical injuries which are shown to be the natural and proximate result of mere fright caused by negligence provided there be an unbroken con 1ection between the negligent act and the injury without the agency of any intervening and independent cause.   And whether the evidence establishes such an unbroken connection has been held to be generally a question for the jury. *Dulien* v. *White*, 2 K. B. 669; *Bell* v. *Gt. Northn. Ry. Co.*, L. R. 26 E. 428; *Chicago & N. W. R. Co.* v. *Hunerberg*, 16 Ill. App. 387; *Purcell* v. *St. Paul City Ry. Co.*, 48 Minn. 134; *Hickey* v. *Welch*, 91 Mo. App. 4; *Watkins* v. *Kaolin Mfg. Co.*, 131 N. C. 536.

We refrain from expressing any opinion upon the adequacy of mere fright or its results, when unaccompanied by physical impact or injury, as a cause of action for damages, because in our judgment there is sufficient evidence in the record before us to go to the jury of such physical impact and injury to the

appellee contemporaneous with her fright as to take the case out of the classes to which we have just referred. While the physical impact or injury requisite for the purpose under discussion must be actual it need not be such as to occasion an external wound or bruise. Severe and even incurable internal injuries, of which there is no immediate visible or external evidence, may be produced by violence or accident.

The appellee when testifying said that when the hammer struck and broke her umbrella she threw herself away from it and also that she was thrown back by the blow on the umbrella. In response to a question from the Court she said "Because the hammer came down and struck my umbrella and the shock or jar threw me back, I don't just know how it was, for it was so sudden and the accident was over in a minute." In response to the next question she said "it was right then and there that my side was hurt."

A hypothetical question predicated upon the evidence as to the occurrences incident to the fall of the hammer, and the physical condition of the appellee before and after that event was put, without objection, to each one of four physicians of experience who testified in the case asking him what in his opinion was the cause of the aneurism, and the following answers were received:

Dr. Woodward replied, "Well in my judgment in a case of that kind I would attribute the aneurism to the accident."

Dr. Emory replied, "I would say it was due to the violent twist or wrench of the body when she threw herself back, there is no other way I can see to account for it."

Dr. Van Bibber replied, "In my opinion the aneurism was caused by the wrench she sustained at the moment the hammer fell."

Dr. Sellman replied, "I should say it was due to the accident through which she passed."

This evidence was we think legally sufficient to go to the jury for them to determine whether or not the aneurism, which consisted of a rupture of one of the walls of the artery, was produced by the wrench or twist of the appellee's body when

the hammer fell and also whether the blow of the hammer on the umbrella caused the movement of her body. The striking of the umbrella in her hand by the falling hammer constituted a physical impact. It is not necessary that the person of the individual injured in such cases be struck. It is sufficient if the blow fall upon the clothing worn by him or even the vehicle in which he is riding as was the case in *Berard* v. *Boston & Albany Ry. Co.*, 177 Mass., and *Consolidated Traction Co.* v. *Lambertson*, 59 N. J. L. 297.

In *City Pass. Ry. Co.* v. *Kemp*, 61 Md. 74, the female plaintiff got up from her seat in a street car while it was in motion and went onto the platform for the purpose of alighting. The conductor seeing her movement stopped the car suddenly before reaching a stopping place and she was thrown against the railing on the platform and slightly bruised by the jar of the sudden stop. A short time afterwards a cancer developed on the injured part of her person. She sued the Railway Co. for damages and medical testimony having been offered *pro* and *con* as to whether the cancer was the result of the injury the Court held that it was for the jury to determine as a matter of fact whether the cancer resulted from the injury received on the car and that it was proper for the jury to consider the medical testimony along with the other evidence in determining the question. It may be added that the medical testimony in that case connecting the cancer with the injury was not so strong as that submitted to the jury in the present case.

Finding no error in the rulings of the learned Judge below we will affirm the judgment appealed from.

*Judgment affirmed with costs.*