484 A.2d 306

Catherine ROWLEY

v.

MAYOR AND CITY COUNCIL OF BALTIMORE, et al.

No. 199, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Dec. 6, 1984.

Michael Marshall, Baltimore (Henry L. Belsky, Steinberg, Schlachman, Potler, Belsky & Weiner, P.A., Baltimore, on brief), for appellant.

James L. Prichard and William R. Phelan, Jr., Asst. City Sols., Baltimore City (Benjamin L. Brown, City Sol., Baltimore, on brief), for appellees.

Argued before GILBERT, C.J., and WILNER, and GARRITY, JJ.

GARRITY, Judge.

The primary issue presented in this appeal is whether the City of Baltimore, as owner of a building, may be held liable for injuries sustained by an employee of its independent contractor as a result of that contractor's negligence. Our discussion of this issue will involve the legal relationship between three parties: an employer of an independent contractor (Mayor and City Council of Baltimore), an independent contractor[1] (Facilities Management, Inc.), and an employee of the independent contractor, the appellant (Catherine Rowley).

The appellant instituted an action in the Circuit Court for Baltimore County against the Mayor and City Council of Baltimore (City), seeking damages for injuries received as a result of being battered and raped while she was on duty as

---

1.  It is undisputed that the relationship of the City to Facilities Management, Inc. was one of principal to independent contractor.

a security guard at the Baltimore Convention Center.[2] Appellant claimed that it was due to the negligence of Facilities Management, Inc. (FMI) in failing to repair a broken lock on an exterior door to the convention center that an unknown assailant was able to gain entrance to the center and thus be in a position to attack her. At the close of the appellant's case, the court (Hinkel, J.) granted the City's motion for a directed verdict on the ground that the City was not responsible for FMI's negligence in the performance of its contractual duties.

### The Facts

As owner of the facilities, the City, acting through the Civic Center Commission, hired Hyatt Management Corp. (HMC) as an independent contractor to operate and manage the Baltimore Convention Center as well as the Baltimore Civic Center. Although the City retained the general power to oversee the operation of those facilities to ensure that the purposes of the contract were being carried out, it relinquished its control over the day-to-day operation of the facilities. HMC, with the City's acquiescence, subsequently assigned its interests and duties under the contract to FMI. The contract, which set forth FMI's duties, provided in pertinent part that:

> HMC [FMI] shall have the full responsibility for management and direction of the Baltimore Convention Center, Baltimore Civic Center and Baltimore Convention Bureau, which shall include the performance of the following:
>
> .    .    .    .    .
>
> e. Building operations and maintenance, including but not limited to purchasing, payroll, fire prevention, security, routine repairs, janitorial services and energy conservation.

---

2. The defense of governmental immunity was not raised. The activities involved in operating the convention center are clearly of a proprietary nature.

In performance of its duties under this contract, FMI employed the appellant to work as a security guard at the convention center during the midnight shift. The duties of a security guard were to notify management of any property that was damaged, stolen or missing, report any water leaks or lighting problems, and investigate and report any unusual activity in the building. Upon discovering a potentially dangerous situation, a guard was supposed to notify the Baltimore City Police Department and allow it to deal with the situation. Security personnel, therefore, were not issued weapons.

While the appellant was on duty one night, she heard an unusual noise and left the security office to investigate. She was immediately attacked by an assailant who had apparently gained entry into the convention center through a door that had a broken lock.[3] Testimony revealed that the lock had been broken for approximately 11 months prior to this incident, and that the appellant, as well as several other guards, had reported its condition to their supervisors at FMI.[4] Despite their knowledge of the existence of an unsafe condition, FMI failed to repair the lock or otherwise secure the door. In fact, several guards employed by FMI testified that they were forbidden from temporarily securing the door with a chain.[5]

The appellant has alleged that because the Director of Security at FMI was a Baltimore City police detective

---

3. An officer investigating the crime checked the double doors near the guard's station for possible tampering. She discovered a large crack between the two doors which allowed her to wedge either her finger or a knife into the crack and open the door which had a defective lock.

4. There was testimony, however, that because the door was constantly used by employees as an entrance to the building, the door was left unsecure rather than having a guard constantly admitting employees into the building.

5. Detective Robert Leeman, Director of Security at the Baltimore Convention Center, testified that he was neither aware of the condition of the door nor knew of any directive against chaining the exterior doors.

detailed to the convention center, notice to her supervisors at FMI was notice to the City. Detective Robert Leeman testified that during his employment as Director of Security he remained a detective for the Baltimore City Police Department. Although his salary was paid by the City to qualify him for a pension, the City was reimbursed for those payments by FMI. Detective Leeman further testified that he reported to either James Smithers, Director of the Building for FMI or Wayne Lalor, FMI's Director of Operations. The trial court ruled that Detective Leeman was not an agent for the City, and that without proper notice of the defective lock, the City could not be held liable for FMI's negligence in failing to repair it.

### I. Employer's Liability for Negligence of its Independent Contractor

We now focus on the issue of whether an employer of an independent contractor may be held liable for injuries sustained by an employee of its independent contractor as a result of that contractor's negligence.

In *Park v. U.S. Lines,* 50 Md.App. 389, 404, 439 A.2d 10 (1982), this Court accepted the rule concerning an owner's liability for the torts of his independent contractor as articulated in the Restatement (Second) of Torts, § 408, which states:

> Except as stated in §§ 410–429, an employer of independent contractors is not liable for physical harm caused to another by an act or omission of the contractor or his servants.[6]

The rationale behind this rule is that an employer has no control over the acts of the independent contractor. *Gar-*

---

6. The exceptions in §§ 410–429 fall into three broad categories:
   1. Negligence of the employer in selecting, instructing, or supervising the contractor.
   2. Non-delegable duties of the employer, arising out of some relationship towards the public or the particular plaintiff.
   3. Work which is specially, peculiarly or inherently dangerous.

*denvillage Realty Corp. v. Russo,* 34 Md.App. 25, 35, 366 A.2d 101 (1976).

█ In assessing the liability of an employer under the Restatement and the law of this State, however, it is clear that the mere employment of an independent contractor will not always relieve the owner from liability for damages caused by the contractor. *Samson Construction Co. v. Brusowankin,* 218 Md. 458, 464, 147 A.2d 430 (1958); *Washington Suburban Sanitary Commission v. Grady Development Corp.,* 37 Md.App. 303, 314, 377 A.2d 557 (1977). Indeed, Maryland has recognized such a myriad of exceptions to the rule of non-liability that its continued viability as a general principle of law has become suspect. *Id.*

Appellant has raised three specific exceptions that would operate to impose liability on the City for her injuries arising from the negligent acts of its independent contractor. These exceptions are:

1. The injury was caused by the thing contracted to be done, not by collateral negligence.
2. The existence of a non-delegable duty to provide the contractor's employees with a safe working place.
3. The existence of a non-delegable duty to provide a safe building open to the public.

## A. *Liability for the Thing Contracted to be Done*

█ One instance where an employer may be held liable for the negligent performance of the contractor's work is when the injury was directly caused by "the thing contracted to be done", rather than by the "collateral" or "casual" act of negligence on the part of the contractor. *Philadelphia, Baltimore & Washington Railroad Company v. Mitchell,* 107 Md. 600, 606, 69 A. 422 (1908); *Samuel v. Novak,* 99 Md. 558, 569, 58 A. 19 (1904); *Deford v. State, Use of Keyser,* 30 Md. 179 (1869); *Washington Suburban Sanitary Commission v. Grady Development Corp.,* 37

Md.App. at 314, 377 A.2d 557. *Gardenvillage v. Russo*, 34 Md.App. at 40, 366 A.2d 101.

It is well established that while the employer will not be liable for an injury caused by the negligence of his independent contractor in a matter collateral to a contract, he will be liable if the injury could have been anticipated by him as a probable consequence of the work assigned to the contractor, and the employer took no precaution to prevent it. *Weilbacher v. Putts Co.*, 123 Md. 249, 256, 91 A. 343 (1914); *Philadelphia, Baltimore & Washington R.R. Co. v. Mitchell*, 107 Md. at 606, 69 A. 422.

One of the original cases to address this exception to the general rule of an employer's non-liability for injuries arising from the negligence of its independent contractor was *Deford v. State, Use of Keyser, supra*. *Deford* involved a contract to construct a building fronting a public street. While in the process of being erected, the cornice and a portion of the front wall fell upon and fatally injured a woman as she was passing by. The Court held that whether the contractor was an agent or an independent contractor, if it could be shown that the wall and cornice had been constructed in such a manner as to be dangerous to the public as they passed by and thus constituted a nuisance, then the owner of the property causing such condition to exist on his property would be liable for any resultant injury. The Court bottomed its holding on the rationale that "if the contractor does the thing which he is employed to do, the employer is responsible for that thing as if he did it himself." *Id.* 30 Md. at 205.

In *Weilbacher v. Putts Co., supra,* the grant of a directed verdict at the close of the plaintiff's case was challenged by a pedestrian who had been injured by a painter who had fallen off a scaffold. In affirming the judgment, the Court observed that the duty of an owner of property abutting a sidewalk, who employed an independent contractor to paint the outside of a building, does not require him to provide against all *possible* injury. The Court reasoned that to do

so would impose an unreasonable burden upon property owners. The Court held that it is only such injury as may be reasonably anticipated that an owner-employer is bound to take precautions to prevent.

In *Philadelphia, Baltimore & Washington R.R. Co. v. Mitchell, supra,* an employer of an independent contractor was held liable in an action involving injuries to a plaintiff resulting from the negligent dropping of a hammer by the independent contractor hired to construct a bridge over a public street. The Court recognized that bridges must be constructed with dispatch and, as a result, rivets, tools and other objects handled with such rapidity frequently fall to the ground. Although the employer was aware of this possibility and of the fact that the bridge was being constructed over a public street, the employer failed to take any precautions either to hinder public travel under the bridge or to prevent these objects from falling to the ground. The Court determined, therefore, that the employer of the independent contractor could not escape liability for the plaintiff's injuries.

In the more recent case of *Washington Suburban Sanitary Commission v. Grady, supra,* the employer-developer was held liable for the independent contractor's negligent installation of a sewer system which caused extensive damage to a home in the development when a sewer line backed-up in a manner that should have been anticipated by the landowner-employer who caused the work to be performed. The Court stated:

> There can be no doubt that the public health and safety is placed in jeopardy whenever a sanitary sewer system's imperviousness to surface water is destroyed. We hold that when an enterprise is undertaken, the performance of which poses a high potential for harm to such a system, a duty to the public to guard against the danger arises. We think such duty "is one of which an employer cannot divest himself by committing work to a contractor." *P., B. & W.R. Co. v. Mitchell, supra* [107 Md.] at 606 [69 A. at 424]. Id. 37 Md.App. at 319, 377 A.2d 557.

What sets these decisions apart from the case *sub judice* is the absence of any peculiar or special risk inherent in the work to be performed by the independent contractor that could have been anticipated by the owner-employer. The objective of the contract between the City and FMI was to promote, operate and protect the convention center. This work did not pose any peculiar risk or high potential for harm.

■ Since the duties assigned to a security guard did not inherently involve or create a high potential of danger or risk of harm that the City was bound to anticipate and take measures to prevent, the City cannot be held liable for the appellant's injuries under this exception.

### B. *Failure to Maintain Safe Workplace*

An alternate theory of liability asserted by the appellant is that the City had a non-delegable duty to provide the contractor's employees with a safe place in which to work. In *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 19–20, 40 A.2d 43 (1944), suit was brought by employees of an independent contractor to recover for injuries alleged to have been caused by the failure of the contractor to warn plaintiffs that electrical wires were dangerous. The Court affirmed the directed verdict for the defendant observing that:

If the owner employs an independent contractor to do certain work, he owes to employees of the contractor the same duty he would owe to employees of his own to furnish them a safe place to work. When the risk to which an employee is exposed arises from causes which are concealed, the employer is bound to notify him of them, provided that he himself knows them, or by the exercise of ordinary care ought to have known of them. But while the owner must exercise reasonable care to have his own plant safe for employees of his contractor, he does not stand in the shoes of the contractor, for manifestly, if he is concerned only in the general results

of the work and has no control of the details and manner in which the work is to be accomplished, he should not be liable for injuries caused to employees of the contractor during the progress of the work. On the contrary, if the injury is such as might have been anticipated as a probable consequence of the work, and the employer took no precaution to prevent it, he can be held liable for negligence. In other words, liability for injuries to a servant of an independent contractor rests upon the owner when the premises on which the stipulated work is done remain under his control and the injuries arise out of the abnormally dangerous condition of the premises, the owner being chargeable with knowledge of the danger. *Smith v. Benick,* 87 Md. 610, 41 A. 56, 42 L.R.A. 277; *Weilbacher v. Putts Co.,* 123 Md. at 256 [91 A. 343].

*See Bauman v. Woodfield,* 244 Md. 207, 223 A.2d 364 (1966); *Baltimore Gas & Electric v. Thompson,* 57 Md. App. 642, 652, 471 A.2d 768 (1984).

It is obvious that the appellant's case does not fall within the ambit of this exception since it fails to satisfy any of its conditions. While the City retained a general power to oversee the operations of the convention center to assure that the contract's purposes were carried out, it relinquished its control over the daily operation of the convention center, which included making such routine repairs as fixing a broken lock. *Le Vonas* also required the appellant to satisfy an additional prerequisite to an owner's liability— an abnormally dangerous condition on the premises. In *Cutlip v. Lucky Stores, Inc.,* 22 Md.App. 673, 683, 325 A.2d 432 (1974), the late Judge Lowe cautioned that:

> The "abnormally dangerous conditions on the premises" referred to in *LeVonas* do not include conditions which arise after and as a result of the independent contract. The "conditions" are those latent dangers preexisting the contract's carrying over without the owner's taking precautions to guard against the conditions before he permits others to occupy the premises.

Since the door lock was broken after the employment contract between the City and its independent contractor was entered into, an abnormally dangerous condition for which the City might have been held accountable did not pre-exist.

■ Finding no evidence that the unsafe condition caused by the broken lock had pre-existed the contract, or that the City exercised any control over FMI's daily operation of the convention center, we cannot hold that the City is liable under this exception.

### C. *Non-delegable Duty to Provide a Safe Building Open to the Public*

The appellant asseverates that as the City owed a non-delegable duty to provide a safe place that was open to the public, it cannot escape its responsibility for not having repaired the defective lock. She contends that by virtue of public policy, "others besides members of the public ·at large may be owed such a non-delegable duty ... as the danger to which the appellant was exposed could have resulted in harm to *any* person in the building." For support, the appellant points to Section 425, of the Restatement (Second) of Torts which states:

> One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands.

■ We believe that this section of the Restatement is clearly aimed at the protection of business invitees who may come onto the owner's property in order to do business with the owner, while the property is being held open to the public. In the present case, there is no question that the

convention center is a place of business that is normally open to the public. Equally clear, however, is at the time of the attack, it was closed to the public. Furthermore, there is no question that the appellant was not a business invitee. She was not there to buy or sell or attend a show or a convention; the appellant was there to guard the convention center. Thus, she was not a member of the public class protected by Section 425 of the Restatement (Second) of Torts.

The appellant's alternate assertion is that Section 418 of the Restatement is applicable to the case at bar. This section states:

(1) One who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands.

(2) The statement in Subsection (1) applies to any place which is maintained by a government for the use of the public, if the government is under the same duty to maintain it in reasonably safe condition as it owes to the public in respect to the condition of its highways.

■ Highlighting subsection 2, the appellant contends that due to a failure by FMI to keep the convention center in a reasonably safe condition for the use of the public, the City is responsible for any injuries caused by FMI's negligence.

Comment a. of Section 418 provides, however, that:

The rules stated in this Section apply only to harm suffered as a result of the dangerous condition of the highway or other public place, as distinguished from harm caused by the activities of the contractor.

## II. *Primary Negligence of City*

The appellant alternatively contends that the trial court erred in granting the motion for directed verdict because there was sufficient evidence to show that the City was guilty of primary negligence. The appellant argues that on the basis of *Lillie v. Thompson*, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947), the City owed her a duty to provide a more secure work place because it had gained knowledge of the broken door lock through its agent, Detective Leeman.

Contrary to appellant's contention, the holding of *Lillie v. Thompson* does not apply to the case at bar. *Lillie* involved a telegraph dispatcher who worked the midnight shift in a building situated in an isolated part of her employer's railroad yard. Her duties as a dispatcher were to receive and deliver messages to men operating trains in the yard. In order for the trainmen to get the messages, it was necessary for them to come to the building at irregular intervals throughout the night, and it was the dispatcher's duty to admit them when they knocked. Although the employer had reason to know that the yards were frequented by dangerous characters, it failed to provide proper lighting for the building, a guard to patrol the area or a window on either side of the single door through which the dispatcher could identify persons seeking entrance. Because of these conditions, the only way for the dispatcher to detect who was knocking was to unlock and open the door. Responding to a knock one night, she opened the door to an unidentified assailant who entered and beat her with a large piece of iron. The Court held that the incident was foreseeable because the employer had been made "aware of the conditions which created a likelihood that a young woman performing the duties required of petitioner would suffer such an injury as was in fact inflicted upon her." *Lillie v. Thompson*, 332 U.S. at 461–62, 68 S.Ct. at 142.

*Lillie* is clearly distinguishable from the case at bar due to the difference in the employment relationship between the parties. The Court in *Lillie* held that the railroad

company was liable for the dispatcher's injuries due to its failure to exercise reasonable care in providing a safe work place. The case *sub judice*, however, does not involve an employer's duty to provide its employees with a safe place in which to work, but rather the duty of a party who engages an independent contractor to provide the employees of that independent contractor with a secure work place.

■ Unless the premises on which the contracted work is performed remained under the control of the employer of the independent contractor, and the injuries to the contractor's employee arose out of an abnormally dangerous condition that pre-existed the contract, then the employer of the independent contractor cannot be held liable.

■ As was previously determined in subsection B of this opinion, the appellant did not satisfy either condition that would result in the City being held liable for her injuries.

Therefore, as the appellant failed to present sufficient evidence to establish a *prima facie* case, we hold that the trial court was correct in granting the City's motion for directed verdict.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.