KUHN ET AL. *v.* CARLIN ET AL.

[No. 24, October Term, 1950.]

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Marshall A. Levin*, with whom were *Jacob J. Edelman* and *Levin & Levin* on the brief for the appellants.

*Samuel S. Smalkin*, with whom were *Rollins, Smalkin, Goudy & Weston* and *Ginsberg & Ginsberg* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the granting of a judgment *non obstante veredicto* in favor of John J. Carlin, appellee, which set aside verdicts for the appellant, Mary E. Kuhn, a minor, and Bertha Orem, her next friend, rendered by a jury in the Court of Common Pleas of Baltimore City.

The appellant, Mary E. Kuhn, a professional dancer aged eighteen, accompanied by Raymond Anderson, a soldier on June 1st, 1949, entered Carlin's Park, owned and conducted by appellee, John J. Carlin, to which no admission was charged. They patronized several amusement devices in the park. They were then attracted to five machines of metal construction labeled "Loop the Loop" and to the second machine from the end which was made for two persons. It was operated on a swing which turned completely over and at its highest point carried the patron as high as thirty feet in the air. There

was a large sign near this device which stated: "Safe and Easy to Operate" and also "Ride At Your Own Risk".

The appellee, Carlin, had rented the space occupied by this "Loop the Loop" to Clay C. Beckett, who, as lessee, erected, maintained and operated this amusement device without being subject to the direction and control of appellee. Beckett had invented these machines and it was his first adventure in the amusement business. The machine, in which the appellant Kuhn was alleged to have been injured, had been in operation for two weeks before that time. Appellee Carlin did not receive any money from the operation of the machines, other than the rent from the land on which they were placed nor did he pay any of the operational or maintenance expenses. Beckett paid for having the machines installed on the property and all operational maintenance charges. Beckett left the State and carried the machines, at his own expense, to Washington shortly after this accident and he is not a party to this suit because he could not be reached by summons. Of course, in deciding whether a judgment N.O.V. should be granted the court should resolve all conflict in the evidence in favor of the plaintiff and should assume the truth of all evidence and all inferences which may be naturally and legitimately deduced therefrom, which tend to support the plaintiff's claim. *Armiger v. Baltimore Transit Co.*, 173 Md. 416, 425, 426, 196 A. 111; *Dean v. Scott*, 196 Md. 70, 75 Atl. 2d 83.

We will therefore recite the evidence in a light most favorable to the plaintiff. The appellant entered the basket of this machine from the rear and Anderson entered from the other side and was opposite her. Her feet were fitted in heavy steel shoes affixed to the machine. Soft padding was then placed over her ankles and covered by a four inch belt. Behind her body and between her knees and "rump" was a horizontal chain, the ends of which were attached by snaps to each side of the swing after she entered the machine. To the rear of her shoulders was a solid horizontal padded bar. Half-

inch pipes prevented her from falling sideways out of the swing. According to the evidence most favorable to the appellant, there was no tape on the snap which fastened the chain before she entered the machine. Beckett showed Miss Kuhn the two vertical bars which she held with each hand and on which she pulled to give the swing momentum, and the solid horizontal bar covered by soft substance which was located at the rear of her shoulders when she was in a standing position. This was appended as a support to the upper part of her body while the steel shoes affixed to the machine held her feet. Beckett instructed her how to operated the swing. When she swung backward, her body went toward the ground and the chain slapped loosely against her legs. When she was swung forward her body went backward against the chain.

After the machine had made two complete revolutions, it swung back and downward on the third revolution and pressed appellant's body against the chain. She said at that point the chain "gave way" and broke and struck her leg. She said, at the time the chain broke, she was in a crouching position and the solid horizontal bar behind her shoulders did not support her. She lost her grip on the vertical bars and her body was thrown out of the machine. As the swing continued downward she was thrown by gravity back and her head came into contact with the horizontal bar. Although, the evidence most favorable to her was to the effect that, at the time of the accident, there was no tape on the snap holding the chain to the bar, however there was fresh tape on the snap the day after the accident. The only evidence as to why the tape was on this snap was that given in a deposition by Beckett, who said it was there to keep people from unhooking the snap and getting in the machine while he was not in attendance.

Looking at the evidence in the light most favorable to the appellant Kuhn, the accident was caused by a "giving away" and a break in the chain. There is no evidence that the snap was defective or that one of

the links in the chain broke. Nor is there evidence what part of the chain, if any, broke, whether it was the snap or one of the links in the chain. Therefore, there is no evidence in this case of what the defect in the chain consisted. Appellee, Carlin, admitted that he had never seen the machine before it was put in operation and he did not feel that it was necessary for him to inspect it before it was put into operation. He admitted that this machine was in the experimental stage and it was an adaptation of the old time swing which had been popular in amusement parks. He did not personally make an inspection of the machine after it was set up on his property. He did not order any of his subordinates or employees to inspect the swings.

Appellant, Kuhn, relies on the following quotation from Restatement of Torts, Volume 2, Paragraph 415: "A possessor of land who in the course of his business holds it open to members of the public, is subject to liability for bodily harm caused to them, on a part of the land retained in his possession or upon a part thereof leased to a concessionaire, by his failure to exercise reasonable care to secure the use of reasonably safe equipment and methods by an (a) independent contractor employed to do work upon the land while it is open to the public, or (b) independent contractor or concessionaire employed or permitted to carry on upon the land an activity in furtherance of the possessor's business use thereof. * * * Example 4. A, the proprietor of an amusement park, lets out to B, a concessionaire, the privilege of operating a roller coaster. *The roller coaster is improperly maintained, as a reasonably attentive inspection would have disclosed to A.* Due to the improper maintenance, the roller coaster collapsed, causing harm to C., who is riding in one of the cars. A is liable to C." (Italics supplied.)

*As there is no evidence and no one seems to know what the defect in the chain was, either before, at the time of, or after the accident in this case, it is clear that a reasonably attentive inspection of the machine before the acci-*

*dent would not have disclosed any defect in the chain to
(A), Carlin.*

Among the Maryland cases relied on by the appellant
are the following. *In Agricultural and Mechanical As-
sociation v. Gray,* 118 Md. 600, 85 A. 291, the proprietor,
a county fair association, was held liable for an injury
caused by the breaking of a railing in the grandstand.
In that case the Agricultural and Mechanical Association
conducted the fair and had itself erected the grandstand
which broke. In *Lawson v. Clawson,* 177 Md. 333, 9
A. 2d 755, where a grandstand broke at a wrestling
match and injured the appellee, this Court in effect held
that the appellants, the parties liable, were themselves
staging the wrestling match. In *Carlin v. Smith,* 148
Md. 524, 130 A. 340, 341, the appellee entered a small
room called "Just For Fun" and was dropped with a
terrific jolt on a slack canvas and was injured. The
canvas was supposed to be taut. In that case, Carlin,
who was held liable, was the proprietor of the device.
He maintained it and the operator was his employee. An
entrance fee was paid Carlin. In the case now before
us, Carlin had not erected the machine in which the acci-
dent occurred nor was he operating or maintaining it
at the time of the accident.

In the case of *Smith v. Benick,* 87 Md. 610, 41 A. 56,
the proprietor of a pleasure resort employed a competent
aeronaut to ascend in a balloon from the ground. The
aeronaut was an independent contractor supplying his
own servants and using his own discretion. It was shown
that the method of making the balloon ascension was
not one likely in itself to cause injury to spectators.
The proprietor of the pleasure resort was held not liable
to a third party injured by the casual negligence of the
servants of the aeronaut. In *Carlin v. Krout,* 142 Md.
140, 120 A. 232, the appellee received an injury while
on an undulating floor, known as "The Ocean Wave",
an amusement device at Carlin's Park. In that case it
was held, in view of the lack of evidence that the device
was defective or imperfect in design, material or work-

manship and as it was manifestly not intended to be regarded as a perfectly safe means of diversion, the special thrill being due partly to the risks which those passing over it would inevitably incur, there was no evidence of negligence to go to the jury.

In the case now before this Court, looking at the evidence in a light most favorable to the appellant, Mary Kuhn, the chain gave way and broke. There is no evidence that either before, at the time of, or after the accident any link in the chain was defective or that the snap was defective. It is true that after the accident there was tape around the snap. There is no evidence that this tape was there to correct a defect in the snap. It is explained, without contradiction, that this tape was put there to keep people from entering the machine without the owner being in attendance. Under the law, as set out in Restatement of Torts, *supra,* relied on by the appellants, Carlin was not liable, unless a reasonably attentive inspection would have disclosed to him that the machine was not properly maintained. As there is no evidence that this chain was defective before the accident and no one seems to know after the accident, or testified what the defect was, and there being no evidence that a reasonably attentive inspection would have shown to the appellee that the machine was improperly maintained, we are of opinion that the case should not have been submitted to the jury and the judgment N.O.V. will be affirmed.

*Judgment affirmed, with costs.*