## Blue Grass Fair Association v. Bunnell.

(Decided December 19, 1924.)

### Appeal from Fayette Circuit Court.

1. Appeal and Error—On Denial of Motion for Peremptory Instruction, Appellee's Evidence Taken as True.—In reviewing the denial of a motion for peremptory instruction, the evidence favoring appellee must be taken as true.

2. Explosives—Evidence Under Res Ipsa Loquitur Doctrine Held to Warrant Submission to Jury.—In action for injuries caused by explosion of fireworks on grounds of fair association, evidence under doctrine of res ipsa loquitur held to warrant submission to jury.

3. Agriculture—Fair Association Owes Spectators Nondelegable Duty to Provide Reasonably Safe Surroundings.—A fair association, giving public exhibitions of fireworks for which admission is charged, is under nondelegable duty to maintain in reasonably safe condition its buildings, structures, walks, and grounds, to provide spectators with reasonably safe place from which to view entertainment, to police its grounds, and to give spectators notice of places to which they are assigned.

4. Master and Servant—Fair Association Failing to Take Proper Precautions or Select Skillful Fireworks Exhibitor Cannot Rely on

Defense of Independent Contractor.—A fair association, giving fireworks exhibition for which admission is charged, is liable to spectator for injuries caused by explosion, if exhibition would necessarily or probably become source of danger unless guarded against, and defendant failed to take reasonable precautions in that respect, or failed to exercise ordinary care in selecting ·a skilled and reliable exhibitor, in either of which events defense of independent contractor is inapplicable.

5. Explosives—Evidence as to Injuries from Fireworks Display Held to Make Issue for Jury.—In action against fair association for injuries suffered at fireworks display, evidence held to make issue of fact whether exhibition was properly segregated from spectators, and whether spectators were notified of danger, and whether character of explosives rendered them intrinsically dangerous in view of manner in which they were intended to be used.

MAURY KEMPER and MILLER & MILLER for appellant.

SMITH & REYNOLDS, W. E. DARRAGH and RODMAN W. KEENON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Blue Grass Fair Association owns grounds near the city of Lexington, on which it has laid off a race track and constructed a grand stand and other buildings and accessories pertaining to the conduct of an agricultural fair and live stock exhibition, including trotting races.

At its meeting in August, 1922, it gave a display of fireworks each evening, for which it charged admission. Walter Bunnell, while present as a paid patron on the evening of August 24, 1922, received an injury causing the loss of his left eye by an impact from some substance which he claims was negligently ejected from the apparatus used in producing the fireworks.

The display was furnished and operated by the Amercian-Italian Fireworks Company, a corporation, under the direction of its officials, Maxwell Liza and Ernest Balsio.

For his injuries Bunnell sued both corporations and the two individuals named, recovering a judgment of $5,-100.00 against all of them, and from this judgment the Fair Association has appealed.

It is insisted (1) that the appellant was entitled to a peremptory instruction; but if not (2), that the court erred in sustaining a demurrer to the third paragraph of the answer in which it pleaded that it had contracted

with the fireworks company to put on the display; that it had no control over that company, or any of its servants; that it assigned a suitable place for the display to be conducted, and suitable and safe places for its patrons to view the exhibition and policed the grounds for their protection; that the fireworks company was a reliable and skilled company in the manufacture and production of explosives and in exhibiting same; and that appellant had exercised due care in selecting it for the purpose named, and therefore was absolved from any liability for injuries resulting from the negligence, if any, of that company, on the ground that it was an independent contractor.

It appears that the race track is 40 feet in width and a mile in length, with a low fence on either side, except for a short distance on each side of the timer's stand, which is on the inside of the track just opposite the center of the grand stand. To the right and left of it, the length of the grand stand there is a grass plot about 20 to 30 feet wide and 75 yards long, with a low hedge on the inside connecting with the fence at the ends. Between the outer fence and the grand stand is an asphalt pavement, thirty feet in width, and the stand has a seating capacity of 3,000 people. The race track is elliptical, includes about 75 acres, and extends from left to right in front of the grand stand. The inclosure within the track is used as a parking space for automobiles.

The fireworks were displayed from two places. The bombs, rockets and other explosives of like character were discharged from a point within the parking space to the rear of the automobiles. There was also a row of revolving wheels which were stationed at a point east of the timer's stand, and about twenty feet to the rear of the hedge fence, facing the eastern end of the grand stand. These were some 15 or 20 feet high and when in operation formed numerous designs.

Appellee claims that the grand stand and pavement as well as the race track directly in front of the grand stand were all filled with people. In order to see the display he forced his way through the crowd on the race track on the east of the timer's stand, to a place on the grass plot and stopped about fifteen feet from the hedge and about thirty-five or forty feet from the wheels. There was a large crowd all around him and several hundred

persons between him and the wheels, some of whom were inside the hedge. The grounds were not policed and he heard no directions given as to where the patrons should assemble, nor objections made to them being at this place, and so far as he knows there was no notice or warning of any kind forbidding them occupying this space.

While standing at this point he observed one of the wheels become shaky; that it turned to one side and toppled over and emitted a ball of fire directly in his direction, which approached with such velocity as to strike him almost instantaneously, knocking him down and rendering him unconscious. In this he is corroborated by another witness who was present.

Appellant's evidence is to the effect that the explosives emitted from the wheels were absolutely harmless, and that no such explosion occurred as claimed by appellee; that the only way in which he could have received the injury he suffered, was from a prematue explosion of a sky rocket which occurred at the rear of the infield. Such rockets are loaded in a shell with three charges of powder. The first charge is connected with the outside by a rapid fuse. The second and third charges are connected by a slow fuse. The shell is placed in a steel container, the muzzle of which points upward. The fuse is ignited and the fire spreads rapidly to the first charge, which explodes, carrying the rocket upward; the second fuse is timed to ignite the powder at the highest point of the rocket's flight. There is then an explosion which ignites the third fuse, and this is timed to reach the third charge at the proper point in the rocket's downward flight.

Its theory is that on this occasion in some way the inner fuse had become jarred and gave rapid connection to the various charges, so that they were all ignited and exploded simultaneously before leaving the container, which was thus wrecked, portions of it being carried to different parts of the field. All shells were carefully examined before firing, but the defect was latent and could not have been detected by any sort of exterior examination, hence appellant could not be charged with any negligence in not discovering the defect.

As the grand stand seated over three thousand people, there was ample room on it for all of the crowd to witness the entertainment from that place. Appellant

properly policed the grounds and warned everyone, including appellee, not to go within the track or infield, and there was no occasion for anyone to do so. If appellee was injured by an explosion of one of the wheels as he claims, his injuries were caused by his own contributory negligence in disobeying the orders of the police and in voluntarily approaching dangerously near to the wheels for the purpose of inspection after he had been warned not to do so, and that he was thereby barred from a recovery. However that may be, on a motion for a peremptory instruction, the appellee's evidence must be taken as true, and under the familiar rule of *res ipsa loquitur* there was sufficient evidence to authorize a submission of the case to the jury. 22 A. L. R. 617; 25 C. J., page 204; Louisville Lighting Co. v. Owens, 105 S. W. 435; Paducah Traction Co. v. Baker, 130 Ky. 360.

As to whether appellant could relieve itself from liability by intrusting the conduct of the exhibition to an independent contractor presents a more serious question. Appellee maintains that the duty of appellant in this respect was nondelegable. On this he relies on the rule enunciated in Barrows v. Peate, 1 L. R. Q. B. Div. Eng. 321, as developed in this country and cited in 23 A. L. R. 1024, to-wit: "The duty of the employer to take those precautions which are necessary to prevent the work from becoming a probable source of injury to a certain class of persons or property is absolute and consequently nondelegable."

It is also argued that the character of the undertaking in this case was inherently dangerous and falls within the rule epitomized on page 1085 of that volume thus: "The employer is liable for injuries occasioned by the failure of the independent contractor to exercise due care in respect to the performance of work which is inherently or intrinsically dangerous."

Qualifying the above rules it has been held that if due care is exercised in selecting the contractor the proprietor or employer may be relieved from the negligent acts of an independent contractor under certain conditions, though the work is inherently dangerous, 9 Cyc. 19; or consists of the use of high explosives, 11 R. C. L. 681, section 637; Houghton v. Loma Priesta Lumber Co., 14 L. R. A. (N. S.) 914, and case note; Berg v. Parsons, 156 N. Y. 109; 41 L. R. A. 391; Blumb v. City of Kansas, 84 Mo. 112; Cuff's Admr. v. New York Ry., 35 N. J. 17.

As to proprietors of places of amusement the general rule has been thus stated:

"The weight of authority is to the effect that the proprietor or manager of a place of amusement owes a duty to the public who are invited there to exercise reasonable care to see that the premises are safe and are kept in a safe condition, and that if he does not discharge the duty he may be held liable for the injury to the patron, although the exhibition, performance or act which results in the injury is that of a concessioner, independent contractor or other third person." 22 A. L. R. 620. " . . . But since the duty of the proprietor of a place of public amusement is only to exercise reasonable care, and he is not an insurer of the safety of the patrons, his responsibility for negligence of independent contractors or concessioners or other third persons must rest on his own lack of care in failing to keep the premises reasonably safe or in permitting their use by improper persons, or in improper or dangerous ways, and if he has fulfilled his obligation and the injury nevertheless arises through the negligence of one who is not his agent or servant he will not be liable." Ibid 623.

Both propositions being supported by numerous authorities.

Our attention has not been called to any amusement case decided by this court, but a general classification of nondelegable duties has been made in L. & N. R. R. Co. v. Smith, 134 Ky. 47, to-wit:

"(1)   Where the statute imposes a duty upon the employer to perform the work in a given manner; (2) where the undertaking is a matter of contract, imposing upon the employer a fixed duty; (3) where it is contrary to law; (4) where it creates a nuisance; (5) where, from the nature and surroundings of the work proposed, its execution is necessarily attended with such hazards as that injurious results may reasonably be expected."

It is clear that in this case no duty was fixed upon appellant by statute or by contract, and there is no question as to concessioners; under the evidence the performance was not a nuisance or a violation of law, hence, we may omit a further reference to those matters.

Unquestionably appellant was under a nondelegable duty to construct and maintain in a reasonably safe condition the buildings, structures, walks and grounds upon which its patrons were invited; to provide them with a reasonably safe place from which to view the entertainment, by locating the display at a proper distance from them; to police the grounds and give notice to the spectators of the place to which they were assigned. The question is, if it discharged those duties, may it rely on the rule that no one will be presumed to do a negligent act? If under such circumstances it had contracted with a reliable and skillful person to manufacture and produce its exhibition on the assumption that such person would do his duty in that respect, did it thereby relieve itself from liability for any injury caused by the negligence of the latter?

An affirmative view is taken in many courts. Knottnerus v. North Park St. Ry. Co., 93 Mich. 348; 17 L. R. A. 726; Reiman v. Public Service Corp., 82 N. J. L. 464; Rayfield v. Sans Souci Park, 147 Ill. App. 493; Smith v. Benick, 87 Md. 610; 42 L. R. A. 277; Deyo v. Kingston Consolidated Ry., 94 N. Y. App. Appellate Div. 587; Waixell v. Harrison, 37 Ill. 323; Sebeck v. Plattsdeutche, &c., 46 Atl. 631; 124 Fed. 12. See also citation of cases 22 A. L. R., pages 617-21, and 23 A. L. R. 1021-24.

We may concede the force of the argument in favor of that rule, but it is not applicable to all cases. The proprietor of a place of amusement controls the premises; he selects the kind and character of the given entertainment; he also selects and employes the producer and invites the spectators on his premises to witness the exhibition. In view of all this it is his duty, not only to see that the premises are reasonably safe for the spectators, but to select an exhibit that may be safeguarded in a way to prevent its production from becoming a probable source of danger to the spectators, and also to adopt such precautions as are reasonably necessary for the purpose, considering its character, the strength of the explosives used and the ordinary method of its production, and these are duties that he cannot delegate. 14 R. C. L., page 91, section 28; Conrad v. Clore, 93 Ind. 476; Bianea v. Greater A. E. Co., 3 Neb. 656; Wodnik v. Luna Park A. Co., 42 L. R. A. (N. S.) 1070; Stickel v. River S. S. A., 201 Ill. 204.

In the multitude of cases upon the subject there is such an infinite variety of circumstances as to prevent a classification.    A particular act or work that is not ordinarily dangerous (*inherently* or *intrinsically*) may in the absence of precaution become a probable or necessary source of danger by reason of its location and the surrounding circumstances at the time it is performed.

To illustrate: Ordinary fireworks, Roman candles, giant firecrackers or under some circumstances even ordinary firecrackers, if discharged at close range among a crowd in a street or park would probably and necessarily result in danger, would constitute a nuisance and would be a violation of law, and thus fall within four of the prohibited classes above mentioned.

On the other hand if the same, or higher explosives were discharged at a place so remote from the spectators as to remove all apprehension of probable danger resulting therefrom and the spectators had been notified of the place to which they were assigned and warned as to places of danger, there could be no question as to the right of the proprietor to let the contract to another person; and if he used proper care in so doing he would not be responsible for the latter's negligence.    In the first instance the performance would necessarily result in danger; in the last instance it could hardly result in danger except for the negligence of the producer, and such negligence is not presumed.

The instances cited could be determined as a matter of law, but between those extremes many varying degrees of fact may arise in which it would be proper to submit to the jury the issues as to whether, considering the precautions taken by the proprietor, the performance was and remained so intrinsically dangerous as to become a probable source of danger to the spectators.

In this case there was an issue of fact as to whether the exhibition was properly segregated from the spectators or as to whether the spectators were notified of danger; also it might become a question of fact as to whether the explosives were of such a character as to render them intrinsically dangerous, considering the manner in which they were intended to be used.

We conclude that the pleadings authorized this defense, but that it should have been submitted to the jury under a proper instruction.

On another trial the parties may plead to an issue on this question, and if the evidence warrants, the court will conform the instructions to the present status of the parties and in addition give to the jury an additional instruction thus:

Although you may believe from the evidence that the plaintiff was injured as the result of the negligence of some of the parties defendant, as set out in the first instruction, yet under the contract read to you in evidence the defendant, Blue Grass Fair Association, is not responsible therefor, and you should find for it unless you believe from the evidence that the nature of the exhibition was such that its production would necessarily or probably become a source of danger, unless guarded against, and that defendant failed to take reasonable precautions in that respect; or that it failed to exercise ordinary care in selecting a skilled and reliable manufacturer and producer to put on such exhibition, in either of which events it cannot rely on the defense of independent contractor.

We perceive no other prejudicial errors.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.