RAMÓN BONET, ETC., Plaintiff and Appellant, *v.* MUNICIPALITY OF BARCELONETA, ETC., ET AL., Defendants and Appellees.

No. 365. Decided January 18, 1963.

---

*G. R. Padró Díaz* for appellant. *J. B. Fernández Badillo,* *Solicitor General,* and *Nilita Vientós Gastón, Assistant* *Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In providing for the celebration of the traditional patronal festival in honor of Our Lady of Mt. Carmel, the Municipal Assembly of Barceloneta authorized the Mayor to contract a pyrotechnist to discharge the fireworks and skyrocket bombs during the festivities. The municipal executive was expressly authorized to designate the places for putting up the display, but it was provided that the acts would be carried out under the personal supervision of the pyrotechnist and the Commonwealth Fire Service. It was indicated that the rockets could be discharged between eight in the morning and ten in the evening to announce the commencement and termination of each festive day or of the activities to be held during the festivities.[1] Lastly, instructions were issued to exercise special care that the rockets were sent up into space in such a way that their ascent would not run into some object, taking into consideration the direction of the wind and atmospheric conditions in order to obtain an angle of inclination which would prevent damages to persons or property.

In compliance with the ordinance the terms of which have been outlined, the Mayor entered into a contract for $863 with Guillermo Rivera, a pyrotechnist of almost 40 years' experience, whereby the latter bound himself to provide and

---

[1] Section 6 of Act No. 71 of April 26, 1940, 33 L.P.R.A. § 1448, authorizes municipalities to regulate the use of skyrocket bombs from 8:00 o'clock in the morning to 10:00 o'clock in the evening.

Section 1 of Act No. 82 of May 4, 1948, 25 L.P.R.A. § 497, prohibits the manufacture, possession, use, sale, and transportation of firecrackers, torpedoes, strings of firecrackers, nigger chasers, and any other similar contrivances.

discharge the fireworks during the patronal festival.[2] Rivera had rendered this service to the municipality during several years. The contractor provided the equipment and personnel necessary for the activity, which was under his exclusive control.

The display took place in the public square of the locality. By the use of loudspeakers the public was warned on "the dangers of fireworks," and the spectators were asked to keep at a distance of not less than 30 feet from the place where the fireworks were to be discharged. Furthermore, the Civil Defense officers and employees, the Commonwealth Police, and the Fire Service were advised to be on the alert and to maintain order.

On the last day of the festivities of 1957, Freddy Bonet Galán, a young girl 19 years of age, attended the display which was put up in the public square for the amusement of the public. As part of those festivities a device consisting of several wheels which rotated upon being ignited was displayed. One of the wheels flew off, fell to the ground and rolled and came in contact with the left leg of the young girl causing burns. Represented by her father with patria potestas, she filed an action for damages against the Municipality of Barceloneta and pyrotechnist Rivera. The trial court sustained the complaint against the latter and exonerated the municipality from liability on the ground that there existed a relationship of principal and independent contractor.[3] To review the judgment[4] we issued the corresponding writ.

---

[2] The contract specified the fireworks to be displayed or exploded: shell rockets, fancy rockets, devices, luminous strings, double wheels, and other varieties of those usually displayed in traditional patronal festivals celebrated in a majority of the municipalities of the country.

[3] The tenth finding of fact reads thus: "That all the work of displaying and discharging the fireworks during the festivities and particularly on July 20, 1957, was done by Rivera and his employees; that Rivera provided all the equipment; that all the employees used in the fireworks were Rivera's employees; that they were under the exclusive control of Rivera

78

The only error assigned refers to the municipality's liability, since although it was repeatedly admitted that Rivera was an independent contractor, it is pointed out that since there was involved an inherently dangerous activity or a nondelegable duty, the existence of such relationship does not give immunity to the municipality from the claim.

In adopting the doctrine prevailing in the United States when there exists the relationship of employer and independent contractor, we said in *Mariani* v. *Christy*, 73 P.R.R. 729, 748 (1952), that "an employer is liable for the tortious acts of an independent contractor if the injuries caused are the direct and necessary result of the stipulated work, that is, if the work to be done can not be done without danger or injury to third parties and if its very nature and existence are such as to cause or produce danger or injuries. In that case the injury results, not from the manner in which the work is done, but from the fact that it is done at all." See *Morales* v. *Castro*, 85 P.R.R. 275 (1962). In this connection, the trial court expressly concluded that "we are not concerned here with work which necessarily and by its very nature may produce damages, but work which may produce damage by the manner in which it is done." This determination is supported not only by the evidence, but also by daily experience and the interpretations of the courts. Thus, the testimony of the pyrotechnist on examination by the attorney for appellant is pertinent:

"Tell me, these fireworks which were displayed there, or the fireworks in general which are made with powder, are they dangerous?

and were paid by him; that Rivera controlled the means and the manner of doing the work; that Rivera furnished all the materials and the agreement with him was for a lump sum certain; that Rivera's employees received orders only from Rivera and not from the Mayor or municipal officers; that no municipal employee, agent, or officer intervened in the display and discharge of the fireworks in the evening of the occurrence nor at any time during the festivities."

⁴ The court awarded to the minor $5,000 compensation; to her parents, $2,000; and $800 for attorney's fees.

*"It depends on how they are handled.*

"If they are not properly manufactured they are dangerous?

"Yes, sir.

.　　.　　.　　.　　.　　.　　.　　.

"Are they dangerous?

"It depends *on how they are handled, they may be dangerous."*

 In Restatement (Second), Torts, § 416 (Tentative Draft No. 7, April 16, 1962), the same concept to which we have made reference is developed, stating the general rule in the following words: "One who employs an independent contractor to do work, which the employer should recognize as likely to create a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions." [5] As stated in note 3 accompanying the text copied, it is not enough that injury can be anticipated if the contractor should in any way be negligent, since this is true as to any work entrusted to a third person. The essential elements are the "peculiar risk" and "the special precautions," and anyway it does not include what is denominated "collateral negligence," which consists only—as in the instant case—in the improper or inadequate manner in which the job or work is executed and which creates a risk of damages which the employer could not reasonably foresee, if the work entrusted is performed in the usual and normal manner. More clearly stated, the employer is required to contemplate the negligence of the contractor with respect to the risks which are inherent in the normal and usual manner of doing the work under the particular circumstances, but not the negligence or carelessness in the performance of the operative details which ordinarily may be expected to be carried out with proper care. See Restatement, *op. cit.,* § 426, comment

---

[5] In the Spanish original this note contains the text which we need not repeat here.

(b) ; 2 HARPER AND JAMES, The Law of Torts 1406–10 (1956 ed.) ; SMITH, *Collateral Negligence,* 25 Minn. L. Rev. 399 (1941).[6]

■■ The duty of a manager or operator of an exhibition such as that involved herein is limited (1) to providing a safe place to the spectators to watch the exhibition; and (2) to selecting a skillful person for such purpose. *Sebeck v. Plattdeutsche Volksfest Verein,* 124 Fed. 11 (C.C.A. 2, 1903), 46 Atl. 631 (1900) ; *Blue Grass Fair Ass'n v. Bunnell,* 267 S.W. 237 (Ky. 1924) ; *Reisman v. Public Service Corporation,* 81 Atl. 838 (1911) ; *Deyo v. Kingston Consol. R. Co.,* 88 N.Y. Supp. 487 (1904). In *Sebeck* it was said that if the premature explosion is due to an operative defect which is not discoverable on inspection or to the manner in which the fireworks are discharged, the exhibitor is not liable, for his duty is limited to the adequate selection of the person who will provide and send them off; *Deyo* holds the same view; and in *Blue Grass,* although it considers a nondelegable duty, it refers to the duty to provide a safe place to the spectators, and even goes on to affirm that the proper selection of the exhibitor of the fireworks relieves from liability, even though an inherently dangerous work is involved. Applying the rule stated to the facts of the present case, the inescapable conclusion is that the municipality fulfilled adequately its duty to the spectators, since the evidence discloses in an uncontrovertible manner that it employed as contractor a skillful and experienced person and also provided a reasonably safe place to the public to watch the festivities, making sure also, through the intervention of the Police and Civil Defense employees, that it be kept at a reasonable distance from the place

---

[6] Compare *Pickett v. Waldorf System,* 136 N.E. 64 (Mass. 1922), with *Wright v. Tudor City Twelfth Unit,* 12 N.E.2d 307 (N.Y. 1938) ; *Giem v. Williams,* 222 S.W.2d 800 (Ark. 1949), with *McNamee v. Hunt,* 87 Fed. 298 (C.C.A. 4, 1898) ; *Philadelphia, B. & W. R. Co. v. Mitchell,* 69 Atl. 422 (Md. 1908), with *Hyman v. Barrett,* 121 N.E. 271 (N.Y. 1918) ; and *Pye v. Faxon,* 31 N.E. 640 (Mass. 1892), with *Strauss v. City of Louisville,* 55 S.W. 1075 (Ky. 1900).

where the fireworks were discharged and the rockets exploded.

*Doughty* v. *Atlantic City Business League*, 80 Atl. 473 (N. J. 1911), as well as *Speir* v. *City of Brooklyn*, 34 N.E. 727 (N.Y. 1893), reaffirm the rule that it is the duty of the manager to provide a reasonably safe place for spectators to watch the display, and announce that the failure to do so is a nuisance giving rise to civil liability. In those cases the display was set up in an open lot situated in a populated zone. These circumstances are not present in the instant case.

■ Appellant urges that we determine that the operation of fireworks is per se an inherently dangerous activity. As stated hereinabove, neither the daily experience nor the interpretations of other courts warrant such a sweeping assertion. *Crowley* v. *Rochester Fireworks Co.*, 76 N.E. 470 (N.Y. 1906); *Bianki* v. *Greater American Exposition Co.*, 92 N.W. 615 (1902); *Blue Grass Fair Ass'n* v. *Bunnell*, *supra*, in which it was said at p. 240:

"... A particular act or work that is not ordinarily dangerous (inherently or intrinsically) may, in the absence of precaution become a probable or necessary source of danger by reason of its location and the surrounding circumstances at the time it is performed.

"To illustrate: Ordinary fireworks, Roman candles, giant firecrackers, or under some circumstances even ordinary firecrackers, if discharged at close range among a crowd in a street or park, would probably and necessarily result in danger, would constitute a nuisance, and would be a violation of law, and thus fall within four of the prohibited classes above mentioned.

"On the other hand, if the same or higher explosives were discharged at a place so remote from the spectators as to remove all apprehension of probable danger resulting therefrom, and the spectators had been notified of the place to which they were assigned and warned as to places of danger, there could be no question as to the right of the proprietor to let the contract to another person; and if he used proper care in so doing he would not be responsible for the latter's negligence."

And in the opinion rendered in the recent case of *Haddon* v. *Lotito*, 161 A.2d 160 (Pa. 1960), it is unequivocally said that "a public fireworks display, handled by a competent operator in a reasonably safe area and properly supervised is not so [inherently] dangerous an activity." See comment in 34 Temp. L.Q. 71 (1960).

In deciding this appeal we can not be oblivious to the accidents which occurred last Christmas in the operation of Roman candles which caused the death of several children and serious injuries to others. However, on the basis of what has been discussed we can not hold as a proposition of law that fireworks, under the circumstances of this case, are an inherently dangerous activity. We wish to say, however, that we are not passing upon the liability which may attach to the person who sells or provides these devices to children of tender age or incapable of realizing the usual risk involved in their handling. See *Pierson* v. *London*, 156 Atl. 719 (Pa. 1931); *Burbee* v. *McFarland*, 157 Atl. 538 (Conn. 1931); *Victory Sparkler & Specialty Co.* v. *Price*, 111 So. 437 (Miss. 1927); *Bosserman* v. *Smith*, 226 S.W. 608 (Mo. 1920); *Schmidt* v. *Capital Candy Co.*, 166 N.W. 502 (Minn. 1918); cf. *Allen* v. *Gornto*, 112 S.E.2d 368 (Ga. 1959). Nor are we deciding nor advancing any opinion on the power of the Legislative Assembly, in the exercise of its police power, to regulate the sale, use, or disposition of fireworks.

The trial court did not err in exonerating defendant municipality from liability. The writ will be quashed and the judgment rendered by the Superior Court, Arecibo Part, on July 7, 1960 will be affirmed.

Mr. Chief Justice Negrón Fernández dissented.